**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 26 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

TESHAI HOGOS TSEGAY,

Petitioner,

v.

No. 02-9577

JOHN ASHCROFT, United States
Attorney General,

Respondent.

_____

AMERICAN IMMIGRATION LAW
FOUNDATION,

Amicus Curiae.

_____

**APPEAL FROM THE UNITED STATES**
**OFFICE OF IMMIGRATION AND NATURALIZATION SERVICE**
**(NO. A76-939-926)**

_____

Emily Jeanellen Curray (Kenneth Stern and Lisa H. York on the briefs), Stern and
Elkind, LLP, Denver, Colorado, for Petitioner.

Jamie M. Dowd (Peter D. Keisler, Linda S. Wernery and John D. Williams on the
briefs) United States Department of Justice, Washington, D.C., for Respondent.

Beth Werlin, Nadine K. Wettstein, and Mary A. Kenney, American Immigration
Law Foundation, Washington, D.C., on brief for Amicus Curiae for Petitioner.

_____

Before **EBEL** , **TYMKOVICH** , Circuit Judges, and **HEATON,** [*] District Judge.

_____

**TYMKOVICH** , Circuit Judge.

_____

Petitioner Teshai Hogos Tsegay was born in 1954 in a region of Ethiopia that later became part of the country of Eritrea. Though raised as an Orthodox Christian, in 1986 she converted to the Jehovah's Witnesses religion. After being persecuted by government officials for her religious activities as a Jehovah's Witness, she fled Eritrea and legally entered the United States in 1996 on a six-month temporary visa.

In 1997, her temporary visa expired. She lived without proper documentation for two years, and then applied for asylum in 1999. An immigration judge rejected her application after determining (a) that she had failed to file her application within the one-year statutory deadline, and (b) that she had also failed to show "changed circumstances" sufficient to extend the statutory deadline. *See* 8 U.S.C. § 1158(a)(2)(D) (2000). The judge did, however, grant her application for withholding of deportation on the ground that she would likely suffer persecution if returned to Eritrea. Tsegay currently resides in the United States.

_____

[*] Honorable Joe L. Heaton, District Judge, Western District of Oklahoma, sitting by designation.

-2-

Tsegay appealed the denial of asylum to the Board of Immigration Appeals. Under the regulations governing administrative review of immigration appeals,[1] a single BIA member "streamlined" the case, and summarily affirmed the IJ's decision without an opinion. Tsegay now seeks judicial review of the BIA's decision to affirm her case without opinion.

Tsegay acknowledges that under *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1234 (10th Cir. 2003) (analyzing 8 U.S.C. § 1158(a)(3)), we do not have jurisdiction to review the merits of the IJ's decision. Instead, she raises this jurisdictional question: *May we review the BIA's decision to affirm Tsegay's administrative appeal without opinion under 8 C.F.R. § 1003.1(e)(4), even though we do not have jurisdiction to review the merits of her appeal?*

Holding that we have no authority to hear Tsegay's appeal, we DISMISS.

## I. BACKGROUND

Tsegay is a native Ethiopian who converted to the Jehovah's Witnesses religion as a young adult. In the late 1980s, she actively practiced her religion without persecution under the Ethiopian regime and was even able to convert some of her relatives to her faith.

In 1991, after a brutal war that lasted decades, Eritrea achieved its

---

[1] 8 C.F.R. § 3.1(e)(4) (2003), *now codified at* 8 C.F.R. § 1003.1(e)(4), 68 Fed. Reg. 9824, 9831 (Feb. 28, 2003). We will refer throughout this opinion to the more recent codification.

independence from Ethiopia. Tens of thousands of Eritreans lost their lives in the struggle for independence. In accordance with the tenets of their religion, many Jehovah's Witnesses refused to participate in the war for independence and also refused to participate in the independence referendum that followed the war. This aroused widespread resentment against them both by the Eritrean government and among the general population, a resentment that soon developed into active persecution. The Eritrean government subsequently outlawed the practice of the Jehovah's Witnesses faith in Eritrea, stripped all Jehovah's Witnesses of their citizenship rights, and imprisoned some of them for refusing to participate in military service.

Despite these new government restrictions on the practices of Jehovah's Witnesses, Tsegay continued to meet with fellow Witnesses and to conduct her door-to-door ministry. Eventually, Eritrean government forces discovered Tsegay's activities and arrested her for participating in a Jehovah's Witnesses women's group. She was held in jail for three months, during which time her captors verbally harassed her and attempted to convince her to forsake her faith. She was only released after her nephew, a high-ranking official with the Eritrean security services, intervened on her behalf. Her nephew then helped her to obtain a visa to enter the United States.

Tsegay entered the United States on December 26, 1996, with a non-

immigrant B-2 visa that entitled her to remain in the United States until June 25, 1997. In 1997, Congress amended the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 to provide that an alien must apply for asylum within one year after either arriving in the United States or before April 1, 1997, whichever is later. 8 U.S.C. § 1158(a)(2)(B). Accordingly, under the provisions of the Act, Tsegay had one year from April 1, 1997, or until April 1, 1998, in which to file her application for asylum. 8 C.F.R. § 208.4(a)(2)(ii) (2003).

Tsegay filed her application for asylum pro se on July 26, 1999—nearly sixteen months after April 1, 1998. On October 13, 1999, the Immigration and Naturalization Service[2] denied her asylum application and issued her a notice to appear as a removable alien. At the ensuing hearing on January 5, 2000, Tsegay, through counsel, admitted to the factual allegations in the notice to appear and conceded her removeability, but she requested relief from removal in the form of asylum and withholding of removal or, alternatively, voluntary departure. She was granted a second hearing on her request for relief from removal, which took place on August 4, 2000, in Denver, Colorado.

At the second hearing, Tsegay testified that she did not immediately apply

---

[2] "The INS ceased to exist on March 1, 2003, and its functions were transferred to the U.S. Citizenship and Immigration Services ('USCIS') within the newly formed Department of Homeland Security [DHS]." *Batalova v. Ashcroft*, 355 F.3d 1246, 1248 n.1 (10th Cir. 2004). We refer to the INS.

for asylum upon her entry into the United States because she expected to return to Eritrea. She later decided to go to Ethiopia after several of her relatives who were Jehovah's Witnesses found refuge from persecution there. However, she overstayed the expiration of her visa because she could not afford a plane ticket to Ethiopia.

Unfortunately for Tsegay, around the same time her visa expired the conflict between Ethiopia and Eritrea boiled over. Both Ethiopia and Eritrea began deporting each other's citizens en masse to their respective countries. By September 1998, Ethiopia had deported Tsegay's family members back to Eritrea, where they again began to experience persecution because of their faith. About nine months later, Tsegay, who had remained in the United States during this time, filed her application for asylum.

Tsegay acknowledged the untimeliness of her application for asylum, but she asked the IJ to excuse her lateness under the "changed circumstances" exception of INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D) (providing that the INS may consider an alien's untimely application for asylum if the alien demonstrates the existence of changed circumstances that materially affect her eligibility for asylum). In particular, she argued that although conditions of persecution in Eritrea had always existed, changes in conditions in Ethiopia eliminated the safe haven that she had originally expected to find there.

-6-

The IJ denied Tsegay's request at the close of the August 2000 hearing. Although the IJ found that the Eritrean government had discriminated against Jehovah's Witnesses, he also found that Tsegay had failed to prove changed circumstances under § 1158(a)(2)(D) because the conditions in Eritrea had been the same since 1991. The IJ explained that "the statute and the intent of Congress as far as change in country conditions are concerned relate to Eritrea, not Ethiopia" and, accordingly, he did not consider the effect of the changed political environment in Ethiopia.

Tsegay appealed to the BIA on the grounds that the IJ had erred by failing to recognize that "changed circumstances" could include circumstances that took place outside the United States, but not in her home country. The BIA judge assigned to her case did not expressly address this argument. Instead, he summarily affirmed the IJ's decision under the agency's affirmance without opinion ("AWO") regulation and issued an opinion that stated simply, "The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(e)(4)."

Tsegay now seeks to appeal the BIA's decision to apply 8 C.F.R. § 1003.1(e)(4) and affirm her case without opinion rather than issue a written opinion.

## II. THE BIA REVIEW PROCESS

Prior to 1999, all appeals to the BIA were heard by a panel of three Board members. In 1999, however, rapid growth in the BIA's caseload "severely challenged the Board's ability to accomplish its mission [to fairly and timely adjudicate immigration appeals] and require[d] the adoption of new case management techniques." Streamlining, 64 Fed. Reg. 56,135; 56,136 (BIA Oct. 18, 1999). In response, the Attorney General instituted BIA's AWO procedure. *See id*.

In adopting the new procedures, the Department of Justice explained that they were a reasonable solution to the BIA's backlog:

> The number of appeals filed with the Board in recent years has exceeded the Board's capacity to give meaningful, three-Member consideration to each appeal, and to issue written decisions in every case. The summary affirmance process is a reasonable response to the current situation, because it allows the Board to concentrate its resources on cases where there is a reasonable possibility of reversal, or where a significant issue is raised in the appeal, while still providing assurances that correct results are achieved in all cases under the Board's appellate jurisdiction.

64 Fed. Reg. at 56,138; *see also id.* at 56,137 ("To operate effectively in an environment where over 28,000 appeals and motions are filed yearly, the Board must have discretion over the methods by which it handles its cases."); Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54,878, 54,885 (BIA Aug. 26, 2002) ("The Department has concluded that streamlining has proven to be an

effective procedure for managing an ever-increasing caseload and will significantly assist and promote fair and expeditious review of all pending and incoming appeals while maintaining a respondent's rights to a reasoned administrative decision.").[3]

The current version of the AWO regulation is nearly identical to the version adopted in 1999 and is codified at 8 C.F.R. § 1003.1(e)(4). It provides for affirmance without opinion if the Board member believes the IJ decision (1) is correct or contains harmless errors, and (2) does not present novel or substantial factual or legal issues. In full, the current regulation provides:

(4) Affirmance without opinion.

(i) The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was *correct*; that any errors in the decision under review were *harmless or nonmaterial*; and that

(A) The issues on appeal are *squarely controlled* by existing Board or federal court precedent and do not involve the *application of precedent to a novel factual situation*; or

(B) The factual and legal issues raised on appeal are *not so substantial* that the case warrants the issuance of a written opinion in the case.

---

[3] If a case is not affirmed without opinion under 8 C.F.R. § 1003.1(e)(4)(i), either a single BIA member may decide the case *with* a written opinion, *see id*. subsection (e)(5), or the case may be referred to a three-member panel for decision. *See id*. subsection (e)(6).

(emphasis added).

The decision to affirm without opinion "approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the immigration judge or the Service were harmless or nonmaterial." 8 C.F.R. § 1003.1(e)(4)(ii). A BIA member who chooses to apply the AWO procedures may not give reasons for affirming without opinion, but must issue an order that states, "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. *See* 8 CFR 1003.1(e)(4)." *Id*. Once the BIA affirms a decision without opinion, the IJ's decision becomes the final agency determination. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1230 (10th Cir. 2004).

In challenging the BIA's use of the AWO procedure in her case, Tsegay argues that (1) affirmance without opinion violates her right to due process and (2) the BIA member assigned to her case improperly applied the AWO regulation. Accordingly, she requests that this court remand the case to the BIA for issuance of a written opinion explaining why it applied the AWO procedure to her appeal.

### III.    THE BIA'S AFFIRMANCE WITHOUT OPINION REGULATIONS DO NOT VIOLATE DUE PROCESS

Tsegay first asserts that affirmance without opinion violates her right to due process by eliminating individualized, reasoned, and meaningful

administrative decisions. We reject this argument based on our recent decision in *Yuk v. Ashcroft*, 355 F.3d 1222, 1232 (10th Cir. 2004).

We held in *Yuk* that an alien does not have a constitutional right to appeal the IJ's decision to the BIA. *Id*. at 1229 ("An alien has no constitutional right to any administrative appeal at all."). Rather, the right to appeal is merely a regulatory creation of the Attorney General. *See id*. ("[T]he INS had the power to promulgate the summary affirmance regulations and include therein the procedures it deemed appropriate."). Although Tsegay was entitled to a reasoned agency decision on the merits of her petition for asylum, the IJ's decision provides precisely that determination. *Id*. at 1231. Tsegay thus received all the process the Constitution requires.

## IV.   THE BIA'S APPLICATION OF THE AWO PROVISION IS NOT REVIEWABLE

Tsegay's second argument is that the BIA improperly applied the AWO regulation to her case. Before we may examine the merits of this contention, we must assure ourselves that we have jurisdiction to do so.

As a court of limited subject matter jurisdiction, we review administrative agency decisions only as provided by acts of Congress. *Nicodemus v. Union Pacific Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003) ("Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction."); *Xavier Univ. v. Nat'l Telecomm.*, 658 F.2d 306, 307 (5th Cir. 1981) ("[W]e are

authorized to review decisions and orders of administrative agencies only as provided by acts of Congress."). Two statutes define our jurisdiction to review immigration decisions—the Immigration and Nationality Act and the Administrative Procedures Act.

A.    *The INA does not provide for appellate review since we are not asked to review a final order of removal*

The Immigration and Naturalization Act does not give us jurisdiction to review this case. Although the INA grants us general jurisdiction to review a "final order of removal," 8 U.S.C. § 1252(a)(1), Tsegay does not ask us to review the final order of removal, which in this case is the IJ's decision on the merits of her claim. Conceding that the IJ's order is not reviewable, *see Yuk*, 355 F.3d at 1230, she asks us to review only the BIA's procedural decision to affirm without opinion the IJ's denial of her asylum petition.

We agree with Tsegay that the BIA's decision is not a final order of removal under the INA. Instead, it is the agency action that makes the IJ's decision the final order of removal. The INA, however, does not give us any authority to review procedural decisions such as the BIA's affirmance decision. Accordingly, we must look to the Administrative Procedure Act for jurisdiction to adjudicate this case.

B.    *The APA does not provide for appellate review of the decision to affirm without opinion*

Since we have no "final order of removal" jurisdiction under the INA, we now must decide whether we have jurisdiction under the APA. To be subject to review under the APA, the action at issue must be a "final agency action." 5 U.S.C. § 704. The BIA's decision to affirm Tsegay's case without opinion was the final agency action here because it marked "the consummation of the agency decision-making process" and was an action "from which legal consequences flow," in that the affirmance without opinion establishes the IJ's asylum decision as the final order of removal. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Once finality is established, we ordinarily have jurisdiction to review agency action. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

This general grant of jurisdiction is nonetheless subject to two exceptions— we may not review an agency decision if either (1) a "statute[] preclude[s] judicial review" or (2) the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). We address each of these exceptions in turn.

*1.     No statute expressly precludes judicial review*

We first determine whether any statute precludes judicial review of the BIA's decision to affirm without opinion. The IJ rejected Tsegay's asylum application because he found that the changed circumstances exception did not

apply. The INA prohibits us from reviewing any decision regarding the application of the changed circumstances exception. 8 U.S.C. § 1158(a)(3); *see also Tsevegmid*, 836 F.3d at 1234. Had the Attorney General decided not to create any administrative review procedure at all, therefore, we would have had no jurisdiction to review the IJ's decision.

As Tsegay points out, however, § 1158(a)(3) does not entirely preclude judicial review of a BIA streamlining decision. The regulation explaining the AWO process, § 1003.1(e)(4), instructs the BIA to affirm without opinion only if three conditions are met: (1) "the result reached in the decision under review was correct," (2) "any errors in the decision under review were harmless or nonmaterial," and (3)(a) the issues on appeal "are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation" or (b) the factual and legal issues "are not so substantial that the case warrants the issuance of a written opinion in the case." While it is difficult to imagine that we could determine whether prongs (1) and (2) were met without engaging in some prohibited merits review, we could theoretically consider prong (3)(a)—namely, whether Tsegay's case raises novel factual and legal issues—without reaching the merits of the IJ's decision. Accordingly, we cannot say that § 1158(a)(3) precludes all judicial review of the BIA's decision to affirm without opinion.

One panel of the Ninth Circuit, by contrast, has held that review of a decision to affirm without opinion in a cancellation of removal case will necessarily involve a prohibited merits review. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 854 (9th Cir. 2003) ("Because we lack jurisdiction to review the merits of the IJ's discretionary decision . . . we are also without jurisdiction to evaluate whether streamlining was appropriate."). Another Ninth Circuit panel, however, has recently distinguished *Falcon Carriche* and held that it could review the AWO decision under the third prong of the regulation. *Chong Shin Chen v. Ashcroft*, 378 F.3d 1081 (9th Cir. 2004).

In our view, whether a case presents questions unanswered by existing precedents, as required by 8 C.F.R. § 1003.1(e)(4)(i)(A), has nothing to do with whether those precedents are wrong. However awkward and pedantic it would be to determine whether Tsegay's case is novel without at the same time looking into the merits of any similar IJ decision, it would not be impossible.

The question of whether judicial review of the "substantiality" prong of 8 C.F.R. § 1003.1(e)(4)(i)(B) would require a prohibited assessment of the merits presents a closer call. It is not enough, as Tsegay argues, that the issue be substantial to her individual appeal. Rather, the issue must be "so substantial *that it warrants the issuance of a written opinion*." 8 C.F.R. § 1003.1(e)(4)(i)(B). To determine whether a case warrants a written opinion, however, we would struggle

-15-

to avoid looking at the merits of the IJ's opinion, for one of the factors that appellate tribunals such as the BIA typically rely upon in deciding whether to issue a written opinion is whether the opinion below contains any significant errors. *See id.*

In any case, we need not answer definitively if examination of either part of the third prong would require a merits determination because, as we discuss next, the decision to issue a written opinion in a particular case is committed to agency discretion by law.

2.      *The BIA's decision is committed to agency discretion by law*

The APA's second exception to judicial review is narrow. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Under our precedents, whether a decision is committed to agency discretion by law "is determined not only from [the statute's] express language, but also from the structure of the statutory scheme, its objectives, its legislative history and the *nature of the administrative action involved.*" *Colo. Envtl. Coalition v. Wenker*, 353 F.3d 1221, 1228 (10th Cir. 2004) (per curiam) (quoting *American Bank, N.A. v. Clarke*, 933 F.2d 899, 902 (10th Cir. 1991) (emphasis added)).[4] In particular, absent a showing of

_____

[4] Although this exception most often applies when the enabling legislation is "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler*, 470 U.S. at 830, *Colorado Environmental Coalition* makes clear that this is not the only circumstance in

(continued...)

"substantial prejudice to the complaining party," our review of an agency decision is always circumscribed when "a procedural rule is designed primarily to benefit the agency carrying out its functions," rather than "intended primarily to confer important procedural benefits upon individuals." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970). Hence, it is well-settled that agencies have discretion to develop case management techniques that make the best use of their limited resources. *See id.* at 539 ("[The agency] is entitled to a measure of discretion in administering its own procedural rules in such a manner as it deems necessary to resolve quickly and correctly urgent [] problems."); *Vt. Yankee Nuclear Power Corp v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 544 (1978) ("[A] very basic tenet of administrative law [is] that agencies should be free to fashion their own rules of procedure.").

Applying these principles, the Sixth Circuit has held that a BIA decision to affirm without opinion is committed to agency discretion by law. *Ngure v. Ashcroft*, 367 F.3d 975 (6th Cir. 2004). Observing (a) that the application of § 1003.1(e)(4) involves the complex allocation of agency resources, (b) that it was not intended to create substantive rights for aliens, and (c) that judicial review would have disruptive practical consequences and would be unworkable in

---

[4](...continued)
which the exception may apply.

-17-

any case, the *Ngure* court concluded that it did not have jurisdiction under the Administrative Procedure Act. *Id.* at 983–85. Just as courts lack jurisdiction to review an agency's refusal to rehear a case, *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 280 (1987), or bring an enforcement action, *Heckler v. Chaney*, 470 U.S. 821 (1985), they also, according to *Ngure*, lack jurisdiction to review the BIA's refusal to issue a written opinion.

We agree with the Sixth Circuit's assessment of the immigration regulatory scheme before us. Based on our own analysis of the nature of the AWO regulations, the practicality of allowing such review, and the prejudice to petitioners, we conclude that the AWO decision is not reviewable.

a. *Review of the AWO decision would disrupt the agency's management of immigration appeals*

We first look to whether the regulation and the nature of the administrative action are for the benefit of the BIA's orderly management of its immigration docket. There can be little doubt that is the case here. As we explained in *Yuk*, "a BIA summary affirmance is not unlike the summary affirmance or summary disposition procedures employed by courts, which are workload management devices that acknowledge the reality of high caseloads." 355 F.3d at 1232. The DOJ underscored this point when it explained the rationale behind the implementation of the AWO procedure:

> [It] represents a careful balancing of the need to ensure correct

> results in individual cases with the efficiencies necessary to maintain a viable appellate organization that handles an extraordinarily large caseload. The streamlining system will allow the Board to manage its caseload in a more timely manner while permitting it to continue providing nationwide guidance through published precedents in complex cases involving significant legal issues.

64 Fed. Reg. at 56,138. Indeed, the DOJ, in modifying 8 C.F.R. § 1003.1 in 2002, explained that it did not think judicial review of its case management decisions would be appropriate. *See* 67 Fed. Reg. at 54,888 ("[A]n agency must have discretion to innovate and establish new procedures for administrative appeals. . . . The criteria used in the final rule are similar to those used by the federal courts of appeals in deciding whether to hold oral argument or to publish an opinion."). As a case management technique designed primarily to benefit the agency rather than to confer special rights upon asylum petitioners, the decision to affirm without opinion falls squarely into the category of decisions committed to the agency's discretion and beyond our jurisdiction to review. *See Am. Farm Lines*, 397 U.S. at 538–39; *see also Belay-Gebru v. INS*, 327 F.3d 998 (10th Cir. 2003) (holding that we may not review a BIA's refusal to reopen a case sua sponte).

> b.    *Review of the AWO decision would be impractical*

A second consideration is that, as the Supreme Court has emphasized, an agency decision made without statement of reasons creates practical difficulties for judicial review. *See Bhd. of Locomotive Eng'rs*, 482 U.S. at 283 (emphasizing the impracticality of allowing judicial review of denials of reconsideration

-19-

because "[t]he vast majority . . . are made *without statement of reasons*") (emphasis added); *see also Yu Sheng Zhang v. DOJ*, 362 F.3d 155, 159 (2d Cir. 2003) (noting that because the BIA member gives no explanation for the decision to affirm without opinion, the court cannot "speculate as to the nature of the member's analysis" and must instead review the IJ's decision). The reason for this is that it is practically impossible for a court to defer to an agency's interpretation of its own regulations, unless the agency gives some explanation for its decision. *See Bhd. of Locomotive Eng'rs*, 482 U.S. at 283 (noting how unworkable it would be to review for abuse of discretion when a decision is made without statement of reasons); *cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997) ("[A]n agency's interpretation of [its own regulations] is . . . controlling unless plainly erroneous or inconsistent with the regulation."). Section 1003.1(e)(4) explicitly prohibits the BIA from providing an explanation for its decision to affirm without opinion. Thus, we have no practical way to review the BIA's decision under a deferential standard without first remanding the case for an expanded explanation of why the BIA chose to apply the AWO regulation. This would require the BIA to do exactly what it is prohibited from doing when it affirms without opinion. *See* 8 C.F.R. § 1003.1(e)(4)(ii). In essence, we would be rewriting the Attorney General's own regulation.

        *c.     Review of the AWO decision is not necessary to eliminate substantial prejudice*

-20-

The final consideration is whether Tsegay was "substantially prejudiced" by the BIA's decision to affirm her case without opinion. *Am. Farm Lines*, 397 U.S. at 538; *Colo. Envtl. Coalition*, 353 F.3d at 1230. As we have already explained, the IJ's opinion has provided Tsegay with a reasoned and written decision on the merits of her asylum application. *Yuk*, 355 F.3d at 1231–32. We therefore do not believe that she was substantially prejudiced by the BIA's AWO decision.

### d. Other authority

We recognize that the Ninth Circuit recently rejected the view that a decision to affirm without opinion is committed to agency discretion by law. *Chong Shin Chen v. Aschcroft*, 378 F.3d 1081 (9th Cir. 2004). The court in *Chong Shin Chen* concluded that it had jurisdiction to review the AWO decision because whether to apply the AWO regulation is not a "subjective question that depends on the value judgment of the person or entity examining the issue." *Id.* at 1087. This misstates the inquiry. In a sense, every agency decision regarding how best to use limited resources is "objective," in that some uses will always be more "objectively" efficient than others. The reason we avoid second-guessing an agency's case management decisions, however, is not that we are unable, objectively speaking, to manage agency resources better than the agency itself. Instead, we recognize that any attempt to do so through the device of judicial review would infringe upon the "agency's independent discretion." *See Am. Farm*

*Lines*, 397 U.S. at 539. Indeed, as the dissent in *Chong Shin Chen* pointed out, the majority "[n]ot only fail[ed] to analyze and decide what standard [of review] to adopt, but . . . also neglect[ed] to state explicitly what standard it [was] applying." *Id.* at 1090 (Wallace, J. dissenting). Had they done so, they would have discovered, as we have, that they could not apply the usual deferential standard of review without asking the BIA to violate the Attorney General's own regulations.

We also recognize that in a recent case from this circuit, *Batalova v. Aschcroft*, 355 F.3d 1246 (10th Cir. 2004), we stated that we could review a BIA member's failure to refer an asylum appeal to a three-member panel under the administrative regulations. *Batalova*, however, is not on point for two reasons. First, it involved the BIA's application of 8 C.F.R. § 1003.1(e)(6), which, unlike (e)(4), does not specifically prohibit a BIA member from issuing a statement of reasons for its decisions.[5] Reviewing an agency application of (e)(6) therefore does not present the same practical difficulties we have here. Secondly, and even more important, in *Batalova* we had jurisdiction to review the merits of the underlying appeal, which is not the case here under (e)(4). As the court admitted,

---

[5] Section 1003.1(e)(6) provides that "[c]ases may only be assigned for review by a three-member panel if the case presents one of [six] circumstances." Unlike section (e)(4), it does not forbid the BIA from explaining how in a particular case none of those circumstances is met.

"it makes little difference whether . . . the BIA acted through a single member or a three-member panel, because we directly review the IJ's decision." *Id*. at 1253 n.8.

## V. CONCLUSION

In sum, we cannot accept jurisdiction to review the BIA's decision to apply the AWO regulation to Tsegay's agency appeal without either engaging in an impermissible review of the merits of her appeal or interfering with the BIA's inherent discretion to manage its cases.

Accordingly, we DISMISS.

02-9577, *Tsegay v. Ashcroft*
**HEATON**, District Judge, concurring in the result.

I fully concur with the majority's conclusion that we do not have jurisdiction to hear this appeal and that it must be dismissed. However, I believe that result is compelled by the plain language of 8 U.S.C. §1158(a)(3), making it unnecessary to consider the impact of the agency discretion exception in the Administrative Procedures Act.

The issue in this case arises in a very narrow factual and procedural context. Unlike many of the cases addressing the "streamlining" procedure, this case does not involve a denied request for withholding of removal or a denied request for relief under the Convention Against Torture — requests where judicial review is generally available.[1] This case involves only a denied request for asylum. Further, this case involves an untimely request for asylum, outside the one year time limit applicable to such requests. 8 U.S.C. §1158(a)(2)(B).

While asylum determinations are generally subject to judicial review, the rule is different in the case of untimely requests. Section 1158(a)(3) states: "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." Paragraph 2 of §1158(a) includes both the one-year time limit and the exception — changed circumstances — upon which petitioner relies

---

[1] See Ngure v. Ashcroft, 367 F.3d 975 (8th Cir. 2004); Sviridov v. Ashcroft, 358 F.3d 722 (10th Cir. 2004); Georgis v. Ashcroft, 328 F.3d 962 (7th Cir. 2003).

here.  Further, the limitation on judicial review included in §1158(a)(3) extends not only to substantive decisions or judgments but to "any determination" by the Attorney General under paragraph 2.  As I can discern no reason why "any determination" does not also include the Attorney General's decision to streamline a case within the scope of that subsection, I conclude the statute precludes judicial review of the streamlining decision at issue in this case.