**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  05a0264n.06
Filed:  April 7, 2005

No. 02-4455

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SADIO RACKY SARR,
    *Petitioner,*

    v.

ALBERTO GONZALES,
U.S. ATTORNEY GENERAL,
    *Respondent*.

Petition for Review of an
Order of the Board of Immigration
Appeals

_____/

Before: BOGGS, Chief Circuit Judge; KENNEDY and MARTIN, Circuit Judges

**Kennedy, J.**  Petitioner Sadio Racky Sarr appeals two aspects of the Board of Immigration

Appeals' (BIA) summary affirmance of the Immigration Judge's (IJ) decision denying his petitions

for asylum, withholding of removal, withholding under the Convention against Torture, and

voluntary departure.  First, he argues that the evidence compels reversal of the IJ's decision.

Additionally, he argues that the BIA improperly streamlined his case under 8 C.F.R. § 1003.1(e)(4)

and asks this court to reverse the BIA on that basis.  We affirm the IJ's findings that Petitioner does

not have a well-founded fear of persecution if he returns to Mauritania, and we reject his procedural

challenge.

Petitioner Sadio Racky Sarr is an ethnic Fulani (otherwise known as HalPeular or Peulh)

citizen of Mauritania.  According to his testimony, Petitioner's entire village was expelled from the

country by the Mauritanian military in May of 1989.  Rather than expel Petitioner, the army detained

him without cause and forced him to work.  He was beaten repeatedly.  Petitioner's forced labor

ended in 1991 when a guard took pity on him and allowed him and several others to escape from the camp in which they were held.

Petitioner lived in a refugee camp in Senegal for a time, but then learned that a brother of his was living in Canada. Petitioner's brother offered to pay to smuggle Petitioner to the United States so that Petitioner could eventually join him in Canada. Petitioner successfully entered the United States without inspection at Miami, on or about May 29, 1994, and traveled as far as New York City before deciding that he could not reach Canada. He eventually settled in Columbus, Ohio because he knew several people in the area.

In April 1997, Petitioner submitted to the INS an application for asylum. On December 15, 1997, the INS filed a notice to appear, charging Petitioner with being removable as an alien in the United States without being admitted or paroled. Petitioner conceded removability, but supplemented his application for asylum with petitions for withholding of removal, withholding under the torture convention, and voluntary departure. The immigration judge found that Petitioner's testimony was credible and that he had established a past history of persecution. The immigration judge held, however, that the United States had rebutted the resulting presumption of future persecution by showing that conditions in Mauritania had changed to the extent that Petitioner has no well-founded fear of future persecution. Petitioner appealed to the BIA. It affirmed the IJ's opinion pursuant to the "streamline" procedures established by 8 C.F.R. § 1003.1(e)(4).

We review the factual findings underlying the IJ's denial of asylum with great deference, and we uphold them on review unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). To reverse, we must find that "the evidence not only supports a contrary conclusion, but indeed *compels* it." *I.N.S. v. Elias-Zacarias,* 502 U.S. 478, 481

2

n.1 (1992) (italics in original); *Klawitter v. I.N.S.*, 970 F.2d 149, 151-52 (6th Cir. 1992) (identifying the standard of review as the substantial evidence standard).

On appeal, Petitioner challenges the IJ's decision as not being supported by substantial evidence. Specifically Petitioner alleges that the IJ, relying on recent State Department Country Reports on Human Rights Practices for Mauritania: "notes some positive developments in this report, but fails to assign adequate significance to other portions of the document which detail continuing human rights violations."

Under our standard of review, however, this court cannot reverse the IJ just because the IJ does not assign as much significance to portions of the report as Petitioner would like. We agree with Petitioner that the 2000 State Department Report on Human Rights Practices for Mauritania (the 2000 Country Report) could be read in a less favorable manner than the IJ read it. The report does indicate that Mauritania's human rights record remains poor. In addition, the report indicates that "occasional reports of arbitrary arrest and detention by security forces against those protesting the redistribution of land and against returned refugees in communities in the south along the Senegal River" still occur.

The 2000 Country Report, however, also includes substantial information that the government of Mauritania has made significant strides with respect to human rights. The report detailed the return of many Peuhl who were expelled during the time of Petitioner's incarceration. In addition, the general tenor of the report indicates that although the government still has much to do in terms of respecting human rights, and in particular the rights of the Peuhl, it has implemented constitutional, legislative, and bureaucratic changes to facilitate the transition to a freer and more democratic society. The IJ also properly relied on evidence from the United Nations High

3

Commission for Refugees (UNHCR) and the Red Crescent Association that no further impediment to Peuhl refugees returning remains. In fact, the UNHCR ended its "rapid integration project" on the basis that it was no longer needed. Finally, the IJ also properly included a letter from the United States Embassy in Noukchott that indicated that no impediment existed to Peuhl refugees returning to Mauritania.

The IJ did not need to consider the chapter of Silent Terror, a book about slavery in Mauritania, as Petitioner requests, because that chapter dealt with a culture of private slavery that existed or (according to Petitioner) still exists in Mauritania. Petitioner was never a slave in the sense that another person had legal title to him, nor was he a slave in the sense described in Silent Terror. Instead, he was arbitrarily detained and subjected to forced labor by the army. As a result, the chapter of Silent Terror would only be relevant background about ongoing cultural biases or practices in Mauritania. Given that the 2000 Country Report contains evidence that could be read to indicate that the Mauritanian government is taking steps to change that culture, the IJ could have reached the same result even if the IJ had explicitly considered the chapter proffered by Petitioner. Because a reasonable adjudicator would not be compelled to conclude that the IJ ruled incorrectly, we affirm the IJ's findings of changed country conditions that rebut Petitioner's fear of future persecution.

Petitioner originally raised two issue issues related to the BIA's decision to streamline his appeal pursuant to 8 C.F.R. § 1003.1(e)(4). Although Petitioner initially challenged the decision to streamline as violating both his due process rights and the agency's regulations, Petitioner, in his reply brief, acknowledged that this court's decision in *Denko v. I.N.S.*, 351 F.3d 717, 730 (2003),

precludes his due process argument. Pet. Rep. Br. p. 2. As a result, he relies solely on his argument that the agency violated its own regulations in streamlining his appeal. *Id*. at 3-5.

Petitioner does not raise the issue of the agency failing to follow its own regulations with any specificity. He merely asserts that "substantial factual and legal issues" should have precluded the BIA from using its streamline procedures in his case. He also points to the failure of the BIA to address his arguments that conditions in Mauritania have not improved sufficiently to rebut the presumption of future prejudice. Raising the issue of whether the BIA failed to follow its own procedures in such a cursory and conclusory manner does not provide this court with a sufficient basis to address his claim.

Under its regulations, the BIA must use the streamline procedure if a single board member determines that (1) "the result reached in the decision under review was correct;" (2) "that any errors in the decision under reveiew were harmless or nonmaterial;" and (3) that either "(A) [t]he issues on appeal are squarely controlled by existing . . . precedent and do not involve the application of precedent to a novel factual situation" or "(B) [t]he factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case." 8 C.F.R. § 1003.1(e)(4). Thus, under the standard, the BIA member must find that the first two tests are met and that one of the final two tests is met.

Petitioner's arguments that "substantial factual and legal issues" still exist would seem to challenge whether his case met the test under 3(B), and they implicitly challenge parts (1) and (2) as well. Nevertheless, the BIA shall summarily affirm the immigration judge if the board member determines that the case passes the tests in (1), (2), and 3(A). Petitioner does not seem to challenge whether the issues in his appeal are squarely controlled by existing precedent. Should we determine

5

that his case passed the first and second tests, we would, therefore, be obliged to affirm the BIA's use of the streamline procedures.

Furthermore, Petitioner's challenge does not address the preliminary issue of whether this court can review the BIA's decision to streamline a case at all,[1] nor does he provide a standard for review, assuming that this court has the power to review the decision. The power of this court to review the BIA's decision to streamline is not an easy question with an obvious answer. The First

_____

[1] In *Denko*, this court did not rule on the question of whether we could review the BIA's decision to streamline a case. *Denko*, 351 F.3d at 731-32. *See also Hassan v. Gonzales*, No. 03-4446, 2005 WL 724526, at *6-*7 (6th Cir. Mar. 31, 2005). Instead we assumed, without deciding, that we could review such a decision. *Denko*, 731 F.3d at 732. *See also Hassan*, 2005 WL 724526 at *6-*7. Other circuits have split on the question of whether the BIA's decision to streamline a case is a reviewable decision. The majority of circuits that have addressed the question indicate that at least a certain subset of BIA decisions to streamline are reviewable. *Zhu v. Ashcroft*, 382 F.3d 521, 528 (5th Cir. 2004) (discussing a "jurisdictional conundrum" and remanding for the BIA to determine whether it was affirming on a reviewable or non-reviewable basis); *Georgis v. Ashcroft*, 328 F.3d 962, 966-68 (7th Cir. 2003) (recognizing that the Seventh Circuit had previously affirmed streamline decisions, but indicating that in the majority of cases the merits review provides sufficient review irrespective of whether it could review the decision to streamline a case); *Haoud v. Ashcroft*, 350 F.3d 201, 205-08 (1st Cir. 2003) (reversing a decision to streamline when precedent would seem to undermine the result reached by the IJ in the streamlined case); *Chong Shin Chen v. Ashcroft*, 378 F.3d 1081, 1087-88 (9th Cir. 2004) (finding jurisdiction to review and remanding based on the BIA's failure to address a novel argument); *Smirko v. Ashcroft*, 387 F.3d 279, 290-96 (3rd Cir. 2004) (finding that judicial review of the decision to streamline is available and reversing the case).

The Eighth Circuit adheres to the view that it generally lacks the power to review the BIA's decision to streamline a case. *Ngure v. Ashcroft*, 367 F.3d 975, 980-88 (8th Cir. 2003). *Ngure* does, however, recognize that some decisions to streamline may be reviewable. *Id.* at 988 ("*Haoud* may be understood as permitting judicial review of the decision to steamline only in a narrow species of cases, namely, those in which there is both a reviewable and a non-reviewable basis for the IJ's decision *and* a new development in the law that may have undermined the reasoning of the IJ on the reviewable issue.") (italics in original). The Tenth Circuit agrees with the Eighth Circuit. *Tsegay v. Ashcroft*, 386 F.3d 1347, 1353-58 (10th Cir. 2004) (approving of the Eighth Circuit's reasoning in *Ngure*). Although the Tenth Circuit does not specifically attempt to harmonize its result with *Haoud*, the concurrence points out that the scope of review in *Tsegay* was narrower than is true of most immigration cases. *Id.* at 1358. It is unclear what effect, if any, that narrower scope of review might have on the holding.

Circuit in *Haoud* (and implicitly the Eighth circuit in *Ngure* as well) recognizes that in cases where conflicting precedent exists, it would be inappropriate for the board to streamline a case. Additionally, the Supreme Court and other circuits have recognized a difference in the level of deference due factual conclusions of the IJ under our substantial evidence standard and the clearly erroneous standard of the BIA.[2]

We do not believe that Petitioner's cursory arguments are sufficient to raise an issue as to whether the BIA failed to follow its own rules and, hence, Petitioner has waived this argument. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (internal

---

[2] Under its regulations, a three-member BIA panel is required to reverse an immigration judge if the IJ's factual determinations are clearly erroneous. 8 C.F.R. § 1003.1(e)(6)(v). Presumably, a single judge in a streamline decision is to use the same standard. 8 C.F.R. § 1003.1(e)(4)(i). In contrast, circuit courts may only reverse an immigration judge's (or the BIA's) factual determinations when "any reasonable adjudicator would be compelled to conclude to the contrary." *Elias-Zacarias*, 502 U.S. at 481. This "compelled to conclude to the contrary" standard is the substantial evidence standard. *See id.* ("The BIA's determination that Elias-Zacarias was not eligible for asylum must be upheld if 'supported by reasonable, substantial and probative evidence on the record considered as a whole.' 8 U.S.C. § 1105a(a)(4) [since repealed]." and citing *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) which describes the substantial evidence standard); *Klawitter*, 970 F.2d at 151-52. Many courts have recognized that substantial evidence review is different from clearly erroneous review. *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999); *Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 278 (3d Cir. 2004); *Menendez-Donis v.Ashcroft*, 360 F.3d 915, 918 (8th Cir. 2003); *Singh v. Brake*, 317 F.3d 1334, 1344-45 (Fed. Cir. 2002); *see K & M Joint Venture v. Smith Intern.*, 669 F.2d 1106, 1120 (6th Cir. 1982).

All cases that require reversal under the "compelled to conclude to the contrary" substantial evidence standard also require reversal under the clearly erroneous standard. Most cases that require affirmance under the substantial evidence standard also require affirmance under the clearly erroneous standard. In a small subset of cases, however, a case that requires reversal under the clearly erroneous standard might still require affirmance under the "compelled to conclude to the contrary" substantial evidence standard. As a result, for that small subset of cases, an error in the streamlining process would not be corrected by a circuit court reviewing the case on the merits and such a case that should not have been streamlined under the regulations might be affirmed by the circuit court.

7

citations omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."))[3] For the foregoing reasons, we **AFFIRM** the decision of the Board of Immigration Appeals and **DISMISS** the petition for review.

---

[3] Assuming that we can review the BIA's decision to streamline, and assuming that we can identify the appropriate standard of review, we would still not reverse the BIA on the facts here. Like *Denko*, this case does not present a close enough factual question to raise a credible question of whether the BIA properly followed its regulations in streamlining it. *See Denko*, 351 F.3d at 731; *see also Hassan*, 2005 WL 724526 at \*6-\*7.