**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ABUBAKAR JAITEH,

Petitioner,

v.

ALBERTO R. GONZALES, *

Respondent.

No. 04-9505
(No. A79-346-390)
(Petition for Review)

---

**ORDER AND JUDGMENT**\*\*

---

Before **HARTZ**, and **BALDOCK**, Circuit Judges, and **BRIMMER**,\*\*\* District Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*       On February 4, 2005, Alberto R. Gonzales became the United States Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the Respondent in this action.

\*\*       This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*\*       The Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

An immigration judge (IJ) found that petitioner Abubakar Jaiteh, a native and citizen of Sierra Leone, was not credible in attempting to establish that he is a "refugee" within the meaning of 8 U.S.C. § 1101 (a)(42)(A), and therefore that he was not eligible for asylum under 8 U.S.C. § 1158.  The BIA adopted the IJ's order without opinion, and Mr. Jaiteh filed his petition for review with this court, asking us to find that the IJ's adverse credibility determination was error.  Because we find that the evidence does not compel a conclusion that the IJ erred, we exercise our jurisdiction under 8 U.S.C. § 1252(a)(1), and deny the petition for review.

DISCUSSION

When the BIA affirms a decision without opinion, it is the IJ's decision that becomes the final agency determination, and it is the IJ's decision that we review. *Tsegay v. Ashcroft*, 386 F.3d 1347, 1352 (10th Cir. 2004).  In order to qualify for asylum, an alien has the burden of first proving that he is a "refugee."  8 U.S.C. § 1158(b)(1)(B).  A "refugee" is defined as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

-2-

8 U.S.C. § 1101(a)(42)(A). If the alien can prove refugee status, he must then persuade the Attorney General to exercise his discretion and grant relief. 8 U.S.C. § 1158(b)(1)(A); *Batalova v. Ashcroft*, 355 F.3d 1246, 1254 (10th Cir. 2004); 8 C.F.R. § 208.13(a). The IJ found that Mr. Jaiteh had not established that he is a refugee and denied asylum on that basis, so no discretionary determination was required.

Mr. Jaiteh is a citizen of Sierra Leone. He claims that in 1997 he and other students from his father's mosque were kidnaped by Revolutionary United Front (RUF) rebel forces, and that he was forced to train with weapons and participate in an attack on Freetown, the capital of Sierra Leone. After the attack he escaped from the RUF and made his way to New York with the assistance of a false Gambian passport. He stayed with friends of his father in New York for a couple of weeks and then took a bus to Denver. He asserts that if he returns to Sierra Leone, he will either (1) be killed by the government or allied forces, who believe him to be a member of the RUF, or (2) be killed by the RUF in retaliation for his escape. The evidence supporting Mr. Jaiteh's asylum claim consists almost entirely of his personal account of the events in question, as set forth in his application, the asylum officer's report regarding his asylum interview, and his testimony before the IJ.

The IJ issued his oral decision the day of the hearing, specifically finding that Mr. Jaiteh's "story is not a credible one and . . . he is not a credible witness." Admin. R. at 89. The IJ found inconsistencies and implausibilities in Mr. Jaiteh's various accounts of his abduction. The IJ pointed to the fact that while he testified that he was given only a day of weapons training and then forced to participate in an attack on Freetown the next day, the asylum officer's report of Mr. Jaiteh's asylum interview reflected a claim that he was given a week of weapons training. The IJ also noted that although Mr. Jaiteh testified that "his father was a permanent member of the party of the president of the country," he had previously stated in his asylum interview that he and his parents were not members of any groups or organizations. *Id.* The IJ also did not believe that rebels would arm students when the students "had no loyalty to [the rebels] whatsoever," since "[e]ven if [the rebels] could keep their eye on [the students] and put them on the front lines, if the government got the upper hand it is obvious that [the rebels] would have many enemies with automatic weapons." *Id.* Nor did the IJ believe that the government in Sierra Leone would kill Mr. Jaiteh for being a rebel because:

> if[, as Mr. Jaiteh testified,] 200 people were removed and taken
> hostage from the Imam's [mosque,] the government certainly would
> be aware of that, particularly since it was in the newspapers. And
> [Mr. Jaiteh's] being the son of the Imam, it would certainly be easy
> for him to explain what had happened there.

-4-

*Id.* at 90. Finally, the IJ found it significant that although one of the main reasons that Mr. Jaiteh allegedly feared for his life was the newspaper coverage of both his abduction and the attack on Freetown (including reports, which he had seen after he escaped from the country, naming him specifically and containing his picture), he failed to submit copies of any of these newspaper reports to the IJ.

Mr. Jaiteh asks us to hold that the IJ erred in making his adverse credibility finding, arguing that the IJ did not have a "legitimate articulable basis" for the finding. Pet'r Br. at 10. He asserts that his "testimony [before the IJ] was detailed and consistent and supported by information in the U.S. State Department Country Report of Sierra Leone." *Id.* at 5.

An IJ's credibility finding is a finding of fact and, like other findings of fact, is subject to the substantial-evidence test. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). Under that test the IJ's finding will be upheld if "supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* In addition, this court has joined "other circuits in requiring that an IJ generally must give specific, cogent reasons for an adverse credibility finding." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004) (internal quotation marks omitted).

Our review of the record convinces us that the IJ's adverse credibility finding passes these tests.  Mr. Jaiteh's petition for review is DENIED.

Entered for the Court


Harris L Hartz
Circuit Judge