**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANDREWS PADDY NSEERA,

Petitioner,

v.

ALBERTO R. GONZALES, *

Respondent.

No. 04-9576
(No. A79 470 705)
(Petition for Review)

---

**ORDER AND JUDGMENT** **

---

Before **HENRY, ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

** This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Nseera is a native of Uganda who entered the United States with a nonimmigrant visa and applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture. Following a hearing, the immigration judge (IJ) found that Mr. Nseera's testimony was not credible and that he had not met his burden of establishing that he qualified for asylum, withholding of removal, or other relief. The Board of Immigration Appeals (BIA) affirmed the IJ's decision without opinion and Mr. Nseera petitioned this court for review of the denial of asylum. Mr. Nseera argues that the IJ's adverse credibility finding was error because his "testimony was detailed and consistent and supported by information in the U.S. State Department Country Report on Uganda." Pet'r Opening Br. at 1. Because the IJ's adverse credibility finding was supported by substantial evidence, we exercise our jurisdiction under 8 U.S.C. § 1252(a)(1) and deny Mr. Nseera's petition for review.

## BACKGROUND

When the BIA affirms a decision without opinion, the IJ's decision becomes the final agency determination, and it is the IJ's decision that we review. *Tsegay v. Ashcroft*, 386 F.3d 1347, 1352 (10th Cir. 2004). To qualify for asylum an alien must prove he is a "refugee." 8 U.S.C. § 1158(b)(1)(B). A refugee is:

> any person who is outside any country of such person's nationality
> . . . and who is unable or unwilling to return to, and is unable or
> unwilling to avail himself or herself of the protection of, that country
> because of persecution or a well-founded fear of persecution on

account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id*. at § 1101(a)(42)(A).[1]

Mr. Nseera claims he has a well-founded fear of persecution based on his political opinion because he is a member of a Ugandan opposition party and was twice imprisoned because of his membership. According to Mr. Nseera's testimony at the hearing, he was first arrested at a political rally in 1998 and imprisoned in a military barracks for two weeks. This arrest merely strengthened his conviction to oppose the government and his arrest was thereafter held up by his party's leadership as an example of the government's misuse of power. His second arrest also occurred at a political rally, only at this rally he was a scheduled speaker. According to Mr. Nseera's testimony, he was on the dais waiting to be introduced when gunfire broke out. Mr. Nseera fell to the floor and another person fell on top of him. Mr. Nseera thought he had been shot because blood flowed past him on the floor and he feigned death until he realized that "the whole place was filled with soldiers," Admin. R. at 79. The soldiers arrested him and took him to the same barracks as before, telling him ten people had been

---

[1] If an alien can prove refugee status, he or she must then persuade the Attorney General to exercise his discretion to grant relief. 8 U.S.C. § 1158(b)(1)(A); *Batalova v. Ashcroft*, 355 F.3d 1246, 1254 (10th Cir. 2004). Here, the IJ found that Mr. Nseera had not established refugee status and denied asylum on that basis, so no discretionary determination was required.

killed but blaming the deaths on his party. During Mr. Nseera's subsequent ninety-day incarceration he was, among other mistreatments, beaten with rifle butts; tortured by being stripped naked and having a cinder block suspended from his penis by a rope; cut near his left eye with a bayonet; and stabbed in his thigh with a bayonet. The torture caused Mr. Nseera to urinate and sneeze blood, caused sores on his body, and rendered him unable to walk properly. The local leader of the opposition party, a Dr. Kasozi, was finally able to secure his release and transfer to a hospital. Mr. Nseera was hospitalized for three to four weeks, undergoing stitches and a blood transfusion as a result of his injuries. He was required to report to the police every two weeks during his hospital stay but eventually escaped from the hospital and fled to his aunt's house. His father made arrangements for him to become involved with a traditional dance troupe that was traveling to the United States and he practiced with the troop for a period of time in order to perfect his ability to play the instruments used by the group. He then accompanied the troupe from Uganda to a performance in Missouri and, when the dance troupe left to return to Uganda, Mr. Nseera took a bus to Denver.

ANALYSIS

The IJ found Mr. Nseera's hearing testimony regarding his torture to be not credible because he had not mentioned the alleged torture in his asylum

-4-

application.[2]  This court has held that "[a]n IJ's adverse credibility determination may appropriately be based upon such factors as inconsistencies in the witness' testimony, lack of sufficient detail or implausibility." *Elzour v. Ashcroft*, 378 F.3d 1143, 1152 (10th Cir. 2004).  Here, although the asylum application completed by Mr. Nseera directed him to"[e]xplain in detail" the basis for his asylum claim, Admin. R. at 230, he failed to even mention the most crucial portion of his claim: his torture.  When asked on his application for the reason he was seeking asylum, Mr. Nseera wrote:

> Due to political persecution.  Abuse of my fun[d]amental rights by the current Uganda[n] authorities.  Twice detained at Makindye military barracks due to my political beliefs.  (See attached detailed account[.])

*Id.*  The detailed account alluded to is four pages in length and includes many details describing the political situation in Uganda.  It discusses Uganda's leader, Yoweri Museveni, his abuses of power, and his betrayal of former allies.  It discusses the goals of various opposition parties.  It also discusses Mr. Nseera's fear that Museveni is seeking to build a dynasty, grooming first his brother as a successor, and then his son to take power from his brother.  Mr. Nseera complains

---

[2]    The IJ also found it implausible that, if such torture had actually occurred, Mr. Nseera had not found a more expeditious means of fleeing Uganda than with a traditional dance troupe.  We need not discuss this basis for the IJ's adverse credibility determination because we hold the differences between Mr. Nseera's application and his testimony provide substantial evidence for that determination.

that Museveni broke the law by sending his son to the Sandhurst military academy in Britain and then assigning his son as commander of the presidential guard. Although the statement makes general claims regarding Museveni's use of violence to silence opposition and states that "more and more members of [the political party to which Mr. Nseera belongs] continue to perish at the hands of a dictatorial regime in Uganda in the name of freedom and justice," *id*. at 241, it does not make any mention of Mr. Nseera himself being tortured. Instead, his statement simply relates that he was in "military detentions on two occasions" and that if it were not for the "quick intervention" of Dr. Kasozi, "most probably [he] would not be here today." *Id*.

An IJ's credibility finding is a finding of fact. *Elzour*, 378 F.3d at 1150. Under 8 U.S.C. § 1252(b)(4)(B), "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." We interpret this statute to call for review under the substantial evidence test, under which the IJ's finding will be upheld if "supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour*, 378 F.3d at 1150. To reverse, the evidence must not only support the conclusion that the IJ erred, but *compel* it. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *accord Batalova*, 355 F.3d at 1254 (holding that the IJ's or BIA's credibility determinations are not questioned if they are substantially reasonable).

This court has, however, joined "other circuits in requiring that an IJ generally must give specific, cogent reasons for an adverse credibility finding." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004) (quotation marks omitted).

Here, the IJ gave specific, cogent reasons for his adverse credibility finding and we cannot say his adverse credibility determination fails to pass the substantial evidence test. The IJ found that, although it was not unusual for an applicant's testimony to be more detailed than his application, it was *not credible* that Mr. Nseera would not have even mentioned in his written statement the horrible abuse he allegedly suffered. In the same vein, the IJ noted that although Mr. Nseera's written statement alleged he was released from detention due to the "quick intervention" of Dr. Kasozi, Admin. R. at 241, he testified that he was jailed the second time for three months. We note that when asked to state in detail why he was seeking asylum, Mr. Nseera complained in his application about general injustices such as Ugandan officials "siphoning every dime in the treasury," *id*. at 239, without mentioning government soldiers suspending a cinder block from his penis and bayoneting him in the leg. Similarly, Mr. Nseera's written statement specifically complains that supporters of a different opposition leader "have been slain in broad daylight," *id*. at 240, but makes no mention of the ten people of *his* party supposedly killed around, and possibly even on top of, him at the political rally. Although Mr. Nseera states in his application that "[i]f

I were forced to return to Uganda I am pretty convinced that [if I don't] end up languishing in Ugandan jails, there is a good chance of being executed," *id*. at 232, the reason he gives in the final two sentences of his written statement for seeking asylum is that he does "not wish to return to Uganda as long as Museveni's dictatorial regime still executes Ugandans at will, denies them their fundamental rights, and continues to suppress all forms of political activities," *id*. at 241. Although Mr. Nseera was asked at the hearing to explain his failure to complain about the purported torture in his application, and he testified that he had considered discussing the torture, his only explanation for his failure to do so was that "[he] thought maybe it is better to do it than to write it down," *id*. at 106.

Consequently, we cannot say that any reasonable adjudicator would be compelled to conclude that the IJ's adverse credibility determination was error.

CONCLUSION

Therefore, we must affirm the IJ's denial of asylum. As noted in the IJ's decision, Mr. Nseera presented no other evidence to corroborate his testimony. He failed to present a membership card despite the fact that he was allegedly an important member in his political party; he failed to present any newspaper reports regarding the shooting and alleged deaths at the political rally where he was arrested the second time; and he failed to present any hospital records from his hospital stay. Without credible testimony or any other evidence Mr. Nseera

cannot be said to have proven refugee status.  Mr. Nseera's petition for review is

DENIED.

Entered for the Court



Robert H. Henry
Circuit Judge