United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 19, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-61098

YUQING ZHU,

Petitioner,

VERSUS

JOHN ASHCROFT, U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.[*]

DeMOSS, Circuit Judge.

Petitioner Yuqing Zhu is a native and citizen of China. She entered the United States legally on a business visitor's visa and received various visa reclassifications and extensions until the Immigration and Naturalization Service ("INS") terminated her legal status in April 2000. Zhu then applied for asylum and withholding of removal and her case went before an Immigration Judge ("IJ"). The IJ denied her petition. Zhu appealed to the Board of Immigration Appeals ("BIA"). The BIA affirmed "without opinion,

---

[*] Judge Garwood concurs in all except footnote 2.

1

the result of the decision below." Zhu filed a timely petition for review of the BIA decision and also filed with the BIA a motion to reconsider. The BIA denied Zhu's motion. She now appeals the BIA's affirmance without opinion of the IJ's denial of her asylum petition and request for withholding of removal. We vacate the BIA's decision and remand to the BIA.

## BACKGROUND

Yuqing Zhu is a native and citizen of China. She entered the United States legally in October 1997 on a business visitor's visa. Zhu received various visa reclassifications and extensions until the INS terminated her legal status in April 2000.

Zhu applied for asylum in October 2000, after which the INS referred her to an immigration court. The INS issued a notice to appear in December 2000, in which Zhu was charged with a failure to comply with the conditions of her visa. Zhu admitted to the charges in the notice. In fact, it appears that it was because of Zhu's own honest indications to the INS that she was not employed or a student sufficient to establish eligibility for a work or student visa because she was busy raising her child that began the process of terminating her legal status in the United States. Based on her admissions, Zhu was ordered removable as charged. She thereafter applied for asylum, withholding of removal, relief under the Convention Against Torture (CAT), and, alternatively, for voluntary departure.

2

In an affidavit attached to her application for asylum, Zhu attested that she had an abortion in 1994. Zhu stated: "Although I was not physically forced to do so, I had no real choice." Zhu explained that childbirth out of wedlock is illegal in China and carries consequences. She described the abortion as traumatic.

An IJ held a hearing. Zhu testified to the following. In 1994, while living in China, in the province of Zhejiang, Zhu became pregnant by her boyfriend. She was unmarried. She and her boyfriend would not have been allowed to marry because she would have been forced to undergo a medical examination. Zhu elected to have an abortion because China's family planning policies prohibited single women from having children, and she would have ended up in jail had she given birth. Zhu traveled to a remote town where no one would recognize her to have the abortion. Zhu feared being recognized because "this is a punishable matter."

Zhu was three months' pregnant when she had the abortion. Her boyfriend made the arrangements. She was not given anesthesia for the three-and-a-half-hour procedure, and she had to be held down. Because of the pain, Zhu asked that the procedure be stopped. Zhu saw the fetus, which was already formed, cut up and placed in the trash.

Later, but while still in China, Zhu had a relationship with a "Mr. Wong," and she discovered he was married but he wanted to continue the relationship. In September 1997, while still in China, Zhu found out that she was pregnant again--this time by "Mr.

Wong."  Wong became angry about the pregnancy and wanted her to have an abortion because he did not want any issues with his family, friends, or political party.  Zhu feared having an another abortion because of her prior experience.  Additionally, she had an ovary removed in 1997 and was concerned that an abortion would affect her health.

Zhu believed that Chinese law required her to abort the child.  She also believed that had she stayed in China she would have been denied medical treatment and would have been forcibly sterilized.  She also believed she would lose her job with its benefits and her housing.  Were she to have the child, the child would not have been recognized as a citizen and, therefore, would have been refused admission to school and medical treatment.  Zhu decided to try to come to the United States where she could have the baby.

Through her work, Zhu requested the opportunity to study in the United States and because she scored well on her employer's testing she was granted the opportunity.  Zhu entered the United States on a business visitor's visa in October 1997 with three months' authorized stay.  Zhu extended her business visitor's visa for six months, then received student and work visas.  Her daughter was born in the United States in May 1998.  Zhu, however, did not work after June 1999 because her daughter's health was not good at that time.  Zhu did not file her asylum application within one year of her arrival in the United States because she was busy studying and caring for her child and her legal visa status kept getting

4

extended. When her legal status was terminated in April 2000, it appears Zhu contacted several attorneys and looked into applying for asylum and ultimately applied by October 2000.

On cross-examination, Zhu testified that on her application for asylum she stated that she did not know anyone in the United States when she arrived but that Jiang Wang, the father of her child, was living in the United States.[1] Zhu maintained that she had not seen Wang since coming to the United States and that he had not given her any money. Zhu testified that upon her arrival in the United States she moved in with Chen Fen Wang, a different person. Zhu listed on an INS form relative to her status as a student that her means of financial support while a student was from "Friend/Jun Wang." Zhu testified that she never accepted money from Jiang Wang, the child's father, and that she paid for her schooling herself.

Zhu introduced into evidence a newspaper article relative to China's family planning policy. On cross-examination it was brought out that the Chinese official quoted in the article stated that there is no forced abortion in China and that children born out of wedlock are not discriminated against by officials, but that the woman are ridiculed and scorned for what is considered their selfish and irresponsible act of getting pregnant.

The INS submitted reports and articles on the conditions in

---

[1] Jiang Wang's name was misspelled as "Wong" earlier in the hearing.

China.  Included was a "1999 Department of State Country Report on Human Rights Practices for China," which stated the following. "Unmarried women cannot get permission to have a child." "Population control policy relies on education, propaganda, and economic incentives, as well as on more coercive measures, including psychological pressure and economic penalties."  People who comply with China's family planning regulations receive financial rewards such as monthly stipends, preferential medical and educational benefits, and old-age insurance.  The penalties for violating the family planning regulations include fines, withholding of social services, or other administrative punishments that sometimes result in the loss of employment.  In the province of Zhejiang, where Zhu was from, violators are assessed a fine of 20 percent of the parents' salary, assessed over five years.  The report further stated that "[c]entral government policy formally prohibits the use of force to compel persons to submit to abortion or sterilization," although there were some documented instances in which family planning officials used coercion, including forced abortion and sterilization, to meet family planning goals.  The report stated that during an unauthorized pregnancy a woman may be visited by family planning workers and pressured to terminate the pregnancy.

The IJ determined that Zhu was removable as charged.  In reaching its decision, it is not clear what the IJ relied on; but it appears the IJ considered Zhu's application, her testimony, the

6

country reports submitted by the INS, and the IJ's own personal feelings about out-of-wedlock pregnancies and unwed motherhood. The IJ considered Zhu's application for asylum contemporaneously as an application for withholding of removal.

The IJ found Zhu to be credible, stating that her "testimony generally tracked most of the information that she presented with her application for political asylum." The IJ also noted, however, that Zhu's credibility was clouded because she revealed only under cross-examination that the father of her child was in the United States.

The IJ determined as an initial matter that Zhu's application for asylum was untimely because she had one year from her arrival in the United States to file it. The IJ noted that the regulations had changed to permit Zhu to file the application within a "reasonable" amount of time from her arrival if she could show extraordinary circumstances. The IJ determined Zhu's application was not filed in a reasonable amount of time given that Zhu's authorization to stay in the United Sates was adjusted several times and that she waited more than six months after the INS denied her last request for an extension to file the application. The IJ held this despite the fact that Zhu had apparently spent those six months attempting to find legal help to assist her in her application for asylum. The IJ observed that Zhu's application was filed three years after her arrival in the United States. The IJ then stated, without giving any support, that he considered 60 days

7

to be a reasonable time within which to file for asylum. Finally the IJ concluded that:

> [T]his lady [referring presumably to Ms. Zhu] came to the United States to seek refuge. She instead applied for a number of extensions and adjustment of status, but claimed that she was too busy with taking care of her child or with her work or with her school. The Court does not find that to be a reasonable explanation of her real purpose of coming to the United States.

The IJ then stated that "[e]ven assuming that the respondent did, in fact, file the application for political asylum within a 'reasonable amount of time,'" Zhu failed to establish eligibility for political asylum in the United States. The IJ also noted that rather than being persecuted Zhu "had two extramarital relationships in China with two different men at two different times."

The IJ then addressed whether Zhu had been persecuted in the past. Despite the IJ's statement that Zhu was credible, the IJ concluded she had not been persecuted. The IJ noted that Zhu had an abortion by choice. The IJ stated: "She voluntarily went to have the abortion upon the belief that she need[ed] to abide by the law and that she had no way out, other than having an abortion." The IJ determined that Zhu's second pregnancy did not indicate past persecution in China as no one forcibly acted on Zhu in connection with that pregnancy.

Next, the IJ addressed whether Zhu would be subject to persecution if she returned to China. The IJ concluded that if Zhu were to return to China with her daughter, there was not enough

8

evidence to conclude that the child would not receive the same benefits as other children born to parents in China. The IJ noted that forced abortion and sterilization in China "have diminished, especially in rural areas." The IJ further noted that there was nothing that prevented Zhu from moving to another part of China to start a new life with her child or prevented Zhu from returning to China and living a transient life as a street person or part of a "floating population" and therefore evading authorities and any possible persecution. Again, it is not clear where the IJ got the information on which to make his decision that Zhu could relocate or live a transient life. Likewise, it is not clear why the IJ reached the question of whether Zhu would be subject to future persecution considering the IJ apparently determined she was not persecuted in the past. Additionally, it is equally unknown why the IJ addressed the possibility of relocation when such an issue only comes up if the respondent can prove the applicant can avoid future persecution by relocating. In this case there is no issue of relocation because Zhu's claim is based on China's national population control policy and not some local persecution. Further, the IJ's suggestion that Zhu join a group of people living in China's "floating population" to avoid persecution is desultory.

The IJ concluded that "there is nothing even close to persecution in this case. There is nothing close to even the change in the law regarding forced abortion and forced sterilization in Chinese cases." The IJ stated that, even

9

disregarding Zhu's failure to mention that the father of her child lived in the United States, this was not a case of well-founded fear of persecution. He therefore denied Zhu's applications for asylum and withholding of removal. In conclusion, rather than addressing the legal issues, the IJ summed up his feelings about Zhu by stating:

> She already had a relationship resulting in a pregnancy and abortion in 1994. She chose to do it again, for whatever reason, in 1997. She is not a young inexperienced person. She has to take responsibility for her own personal choices and her personal choice of having a child. She is the mother of this child and she needs to take care of her and take along the risk of having the child.[2]

The IJ further determined that, because Zhu failed to show that she was "tortured" in China within the meaning of the CAT, she was not entitled to withholding of removal under the CAT. The IJ granted Zhu voluntary departure with an alternate order of removal to China.

Zhu appealed to the BIA. On December 9, 2002, the BIA affirmed "without opinion, the result of the decision below." Citing 8 C.F.R. § 3.1(e)(4).[3] Zhu filed a timely petition for review of the BIA decision on December 19, 2002. Zhu also filed

---

[2] As this moralistic comment indicates, we pause to note the highly inappropriate and facially sexist commentary by the IJ that is pervasive in his opinion and often is substituted for what should have been a thorough legal analysis of Ms. Zhu's asylum petition.

[3] 8 C.F.R. § 3.1(e)(4) has been recodified as 8 C.F.R. § 1003.1(e)(4).

10

with the BIA a motion to reconsider. The BIA denied Zhu's motion. She has not filed a petition for review of that decision.

## DISCUSSION

An alien is required to file an application for asylum within one year after the date of the alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Section 1158(a)(2)(D) excuses an alien's delay in filing an application if the alien demonstrates "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay." Id. § 1158(a)(2)(D). Section 1158(a)(3) provides that "[n]o court shall have jurisdiction" to review a determination by the Attorney General that an application is untimely. Id. § 1158(a)(3).

Zhu argues that the BIA's affirmance without an opinion leaves unclear whether the BIA affirmed the IJ's denial of her application for asylum because it deemed her application untimely and ineligible for the exceptions that Zhu argued or because the BIA rejected the merits of the asylum application and affirmed without opinion because the IJ's error, if any, on the timeliness issue was deemed "harmless or nonmaterial."[4] This Circuit has not yet

---

[4] 8 C.F.R. § 1003.1(e)(4) provides:

(i) The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that

11

explicitly addressed whether it has jurisdiction to review a BIA board member's decision to affirm without opinion according to the procedure outlined in 8 C.F.R. § 1003.1(e)(4). Three unpublished decisions indicate that this Court has jurisdiction to review the BIA's decision to affirm without opinion. See Dika v. Ashcroft, No. 03-60220, 2004 WL 34814, at *1 (5th Cir. Jan. 6, 2004)(unpublished); Turrbiartes-Vitales v. Ashcroft, No. 02-60932, slip op. at 2-3 (5th Cir. Sept. 19, 2003) (unpublished); Patel v. Ashcroft, No. 02-60683, 2003 WL 21754959, at *1 (5th Cir. July 30, 2003)(unpublished); see also 5TH CIR. R. 47.5.4 (stating that while not controlling, an unpublished opinion may be persuasive authority). One published opinion addresses the issue, but then fails to articulate any decision on reviewability. See Garcia-Melendez v. Ashcroft, 351 F.3d 657, 662-63 (5th Cir. 2003) (reviewing the underlining IJ decision and finding no error). Additionally, other circuits have exercised jurisdiction to review the BIA's decision to affirm without opinion. See, e.g., Batalova v. Ashcroft, 355 F.3d 1246, 1252-53 (10th Cir. 2004); Haoud v. Ashcroft, 350 F.3d 201, 205-06 (1st Cir. 2003); Falcon Carriche v.

---

   (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel fact situation; or

   (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4)(i)(A)-(B).

12

*Ashcroft*, 350 F.3d 845, 855 (9th Cir. 2003). One circuit has held that the BIA's decision to affirm without opinion is generally not reviewable. See *Ngure v. Ashcroft*, 367 F.3d 975, 980-88 (8th Cir. 2004) (interpreting and limiting the *Hauod* holding, within the Eighth Circuit, to permit "judicial review of the decision to streamline only in a narrow species of cases, namely, those in which there is both a reviewable and a non-reviewable basis for the IJ's decision <u>and</u> a new development in the law that may have undermined the reasoning of the IJ on the reviewable issue").

In this case there is a jurisdictional conundrum; that is, this Court has no way of knowing whether the BIA affirmed the IJ's decision on a non-reviewable basis, <u>i.e.</u>, untimeliness, or a reviewable basis, <u>i.e.</u>, the merits of Zhu's asylum claim. Accordingly, the decision of the BIA is vacated and the case remanded to the BIA for an opinion addressing Zhu's petition.

By vacating and remanding in this case, we make no decision as to the constitutionality of the BIA's affirmance without opinion process; the process has already been found constitutional by this Circuit. See *Soadjede v. Ashcroft*, 324 F.3d 830, 832 (5th Cir. 2003). We also note as other circuits have that the BIA is accorded discretion as an agency and is free to use its affirmance without opinion procedure, but we are equally free to vacate and remand when we simply cannot determine based upon a review of the IJ's decision why the applicant was denied relief.

Additionally, it is important to note that this case is being

13

remanded with several significant issues needing resolution.  To that end, should the BIA decide upon remand that Zhu's application for asylum was timely or her untimeliness is excused, the merits of her asylum application should be addressed.  Most significantly, "forced" under 8 U.S.C. § 1101(a)(42) needs to be defined and whether Zhu meets such definition and therefore can be considered to have suffered past persecution needs to be determined.[5]  If unsatisfied with the BIA's resolution, Zhu can appeal.  If, however, the BIA finds Zhu's application to be timely but decides not to address the merits of her claim and merely affirms the IJ's decision, then Zhu can appeal such a decision to this Court and this Court will then review the IJ's decision as the final agency determination concerning the merits of her claim.  See Soadjede, 324 F.3d at 831-32.  Further, even if the BIA determines that Zhu's

---

[5] Refugees are granted asylum if they can establish past persecution or a reasonable fear of future persecution based upon race, religion, nationality, membership in a particular social group, or political opinion.  Lopez-Gomez v. Ashcroft, 263 F.3d 442, 444-45 (5th Cir. 2001). Zhu's argument relies on the definition of a "refugee" for purposes of asylum applications, which states that "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization . . . shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42); see also Ma v. Ashcroft, 361 F.3d 553 (9th Cir 2004) (interpreting 8 U.S.C. § 1101(a)(42) and holding that male asylum applicant could establish persecution by the forced abortion of his child despite the fact that he was not yet married to the woman whose pregnancy had been terminated because he was too young to marry under Chinese law); H.R. REP. No. 104-469, pt. 1, at 77, 173-74 (1996) (outlining the legislative history of 8 U.S.C. § 1101(a)(42), which was adopted to address the issues concerning applicants who had been subjected to China's population control policies).  The statute, however, does not define "forced."

application for asylum was not timely filed, the issue of whether Zhu was eligible for withholding of removal remains because there is no time bar in seeking withholding of removal. See 8 U.S.C. § 1231(b)(3)(A). Again, here some similar but not identical unsolved issues should be addressed by the BIA on remand, most importantly whether Zhu has suffered past persecution[6] or if she has a well-founded fear of future persecution.[7] The BIA, utilizing its

---

[6] The Attorney General "may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of showing a "'clear probability' that he or she will be persecuted if deported." Mikhael v. INS, 115 F.3d 299, 306 (5th Cir. 1997) (citation omitted). "'[C]lear probability' is equivalent to a showing that 'it is more likely than not that the alien would be subject to persecution on one of the specified grounds.'" Bahramnia v. INS, 782 F.2d 1243, 1247 (5th Cir. 1986) (quoting INS v. Stevic, 467 U.S. 407, 429-30 (1984)). This standard requires a higher objective likelihood of persecution than that required to establish eligibility for asylum. Faddoul v. INS, 37 F.3d 185, 188 (5th Cir. 1994). An alien who has demonstrated that she has suffered past persecution is presumed to have a well-founded fear of future persecution for the reasons that she was initially persecuted. 8 C.F.R. § 208.13(b)(1),(2). This presumption is rebutted when the INS establishes by a preponderance of the evidence that there has been "a fundamental change in circumstances" in the alien's native country. Id. § 208.13(b)(1)(i)(A)-(B). If an alien's fear of persecution is unrelated to the past persecution, the alien "bears the burden of establishing by a preponderance of the evidence" that he or she would suffer future persecution. Id. § 208.13(b)(1)(i)(B)(ii).

[7] Zhu argues that the BIA has repeatedly held that persecution in the form of forced abortion or sterilization creates a presumption of a well-founded fear of persecution for purposes of asylum, and simultaneously meets the higher probability required for withholding of removal. See, e.g., Matter of X- G- W-, 22 I. & N. Dec. 71 (BIA 1998); Matter of C- Y- Z-, 21 I. & N. Dec. 915 (BIA 1997); Matter of X- P- T-, 21 I. & N. Dec. 634 (BIA 1996). In these opinions the BIA found that abortion or sterilization had

15

expertise as an agency skilled in making such evaluations, can address these issues and, if unsatisfied, Zhu can appeal. If the BIA decides not to address the withholding of removal claim, then the IJ's decision is a final agency determination subject to review again in this Court. In other words, we are neither deciding the merits of Zhu's claim nor prohibiting her from pursuing the merits of her claim at some later date.

**CONCLUSION**

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, for the reasons set forth above, we vacate the decision of the BIA and remand with instructions to the BIA for an opinion addressing Zhu's application.

**VACATED AND REMANDED.**

---

been forced or coerced without discussing how and, therefore, granted both asylum and withholding of removal. In X-P-T-, the BIA stated that "the population control-based persecution language of [8 U.S.C. § 1101(a)(42)] applies to all relevant determinations under the [Immigration and Nationality] Act, not just asylum determinations." 21 I. & N. Dec. at 637-38. Thus, the BIA determined that an alien whose forced sterilization was uncontested established past persecution on the basis of political opinion for purposes of withholding of removal. Id.

16