F I L E D
United States Court of Appeals
Tenth Circuit

July 19, 2005

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

PAULA SHARON EKASINTA,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General of the United States,

Respondent.

No. 04-9515

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(B.I.A. NO. A78 145 977)

---

Daniel M. Kowalski, Austin, Texas (T. Douglas Stump, Oklahoma City, Oklahoma, with him on the briefs), for Petitioner.

Andrew C. MacLachlan, Attorney, Civil Division, United States Department of Justice (David V. Bernal, Assistant Director, Office of Immigration Litigation, with him on the brief), Washington, D.C., for Respondent.

---

Before **EBEL**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Petitioner Paula Sharon Ekasinta seeks judicial review of a final order of removal.

The immigration judge (IJ) denied each of her requests for various forms of relief. The

Board of Immigration Appeals (BIA) affirmed without opinion, leaving the IJ's opinion as the final agency ruling. Because each of Petitioner's requests was denied on at least one ground that was discretionary, we lack jurisdiction to review the order of removal. *See* Immigration and Nationality Act (INA) § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B). Consequently, we dismiss the petition.

I.    **BACKGROUND**

On June 10, 1998, Petitioner, a native and citizen of Indonesia, entered the United States at Los Angeles, California. She was initially authorized to stay in this country as a nonimmigrant visitor until November 9, 1998. Her authorization to stay was extended at least until October 19, 2000, and possibly until a later date; in any event, it is undisputed that she remained in this country after her authorization to stay had expired.

On February 16, 2000, while in the United States, Petitioner gave birth to a child, Esther Cordelia. Glenn George Bourdon, Jr., a United States citizen, was the child's father. Bourdon and Petitioner were married on May 28, 2000. Petitioner testified that a friend of hers congratulated her at the wedding reception on becoming a "United States national" on account of her marriage to a United States citizen.

On April 20, 2000, before the wedding, Bourdon had been arrested for physically abusing Esther. On May 4 an Oklahoma state court issued an emergency order transferring custody of Esther to the Oklahoma Department of Human Services. The next

day the state petitioned the court to terminate Petitioner's parental rights because of the physical abuse.

A jury trial was held in January 2001. The jury returned a special verdict finding that Petitioner had not herself harmed Esther but had "inflicted chronic abuse, chronic neglect, or torture" on Esther by failing to protect her "from physical abuse that is heinous or shocking." R. at 271. The jury concluded that it was in the best interests of Esther to terminate Petitioner's parental rights, and the court entered judgment on the verdict. Bourdon was eventually convicted of physically abusing Esther and sentenced to prison.

Meanwhile, on August 29, 2000, in connection with new employment at a Payless Shoe Source store, Petitioner completed an I-9 employee-eligibility-verification form, checking a box labeled: "I attest, under penalty of perjury, that I am . . . [a] citizen or national of the United States." R. at 487. That was when her immigration troubles came to a head. On October 23 the INS charged Petitioner with remaining in the United States after her authorization to stay had expired, in violation of INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). And on October 26 the INS charged Petitioner with failing to maintain the nonimmigrant status with which she had been admitted, in violation of INA § 237(a)(1)(C)(I), 8 U.S.C. § 1227(a)(1)(C)(I), and falsely representing herself to be a United States citizen on the I-9 form, in violation of INA § 237(a)(3)(D), 8 U.S.C. § 1227(a)(3)(D).

At a December 11, 2000, hearing before the IJ, Petitioner conceded that she was removable for remaining after her authorization had expired and for failing to maintain nonimmigrant status, but she contested the charge that she had falsely represented herself as a citizen. She sought cancellation of removal and adjustment of status to lawful permanent resident under three statutory provisions: INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1); INA § 240A(b)(2), 8 U.S.C. § 1229b(b)(2); and INA § 245(a), 8 U.S.C. § 1255(a).

Section 1229b(b)(1) provides that "[t]he Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien" who has been present in this country for 10 years, has behaved properly during this period, and has established that removal would cause great hardship to a child, spouse, or parent who is a citizen or permanent resident. In particular, the alien must not have been convicted of falsely representing herself to be a citizen, in violation of § 1227(a)(3)(D), which can explain Petitioner's decision to contest removability under § 1227(a)(3)(D) even though she was conceding removability on other grounds. Section 1229b(b)(2) provides that the Attorney General may grant the same relief to an alien who meets similar requirements, more lax in some respects, and who is the parent of the child of a United States citizen who was abused by the citizen–parent. Section 1229b(b)(2) relief also requires that an alien not have been convicted of falsely representing herself to be a citizen, in violation of § 1227(a)(3)(D).

-4-

Petitioner claimed eligibility under the third provision, § 1255(a), on the ground that she had been granted her petition under INA § 204(a)(1)(A)(iii), 8 U.S.C. § 1154(a)(1)(A)(iii), to be classified as an alien married to a United States citizen whose child was battered by the citizen–spouse during the marriage. Section 1255(a) states that the Attorney General may adjust the status of an alien who has had such a petition approved if the alien applies for the adjustment, the alien is eligible for permanent residence, and an immigrant visa is available when the application is filed.

We note that Petitioner also sought voluntary removal if she was denied cancellation of removal. *See* INA § 240B(b), 8 U.S.C. § 1229c(b) ("[t]he Attorney General may permit an alien voluntarily to depart the United States . . . if . . . the immigration judge enters an order granting voluntary departure in lieu of removal.") But we lack jurisdiction to review an immigration judge's refusal to grant voluntary departure. *See* 8 U.S.C. § 1229c(f); *Van Dinh v. Reno*, 197 F.3d 427, 434 (10th Cir. 1999). Consequently, we restrict our attention to Petitioner's other claims.

The IJ held several further hearings and issued an oral decision on August 19, 2002. He first decided that the I-9 form sufficed to support the charge that Petitioner falsely represented herself to be a citizen. He said, "To the general public, there is no distinction between being a citizen and being a national," and found Petitioner's testimony that she had believed in such a distinction "patently unbelievable[,] . . . unconvincing and false." R. at 117–18. Accordingly, he held that Petitioner was

-5-

removable under § 1227(a)(3)(D) for falsely representing herself to be a United States citizen.

The IJ indicated that this conclusion made Petitioner ineligible for the statutory relief that she had requested. In any event, the IJ added that even if Petitioner were eligible for these forms of relief, he would deny her applications for them "as a matter of discretion." R. at 123. Each of the provisions on which Petitioner relies only *permits* the Attorney General to grant relief; none requires that he do so. *See* 8 U.S.C. §§ 1229b(b)(1) ("The Attorney General may cancel removal . . . ."), 1229b(b)(2) ("The Attorney General may cancel removal . . . ."), 1255(a) ("The status of an alien . . . may be adjusted by the Attorney General . . . .").

On August 23, 2002, Petitioner appealed the IJ's decision to the BIA. On January 15, 2004, the BIA affirmed without opinion. The IJ's opinion thus became the final agency determination. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1230 (10th Cir. 2004) ("the summary affirmance regulations specifically provide that the IJ's decision is the final agency action").

Petitioner timely petitioned for review in this court.

## II.    STATUTORY LIMIT ON JURISDICTION

We have jurisdiction over petitions for review of final orders of removal, *see* 8 U.S.C. § 1252(b)(2), but that jurisdiction is limited. In particular, § 1252(a)(2)(B)(i) deprives us of jurisdiction to review "any judgment regarding the granting of relief

-6-

under" several sections of the INA, including the ones under which Petitioner seeks relief—§§ 1229b and 1255.

The Government assumes that this limitation applies only to judgments resting on discretionary grounds, and Petitioner unsurprisingly does not contest this interpretation. Although the matter is not without doubt, we need not resolve it in this appeal because even adopting the Government's assumption, we lack jurisdiction. *See Morales v. Ashcroft,* 348 F.3d 1259, 1262 (10th Cir. 2003) (noting that "this provision seems to foreclose judicial review completely," but holding that in any event, the decision on appeal rested on discretionary grounds). The IJ held that even were Petitioner eligible for any of the relief she sought, he would deny relief (on the Attorney General's behalf) as a discretionary matter. Because the final order of review rests on discretionary grounds, it appears that § 1252(a)(2)(B)(i) denies us jurisdiction to review it.

We recognize that one of the grounds relied upon by the IJ was not discretionary—the denial based on Petitioner's having falsely claimed citizenship. But if there are two alternative grounds for a decision and we lack jurisdiction to review one, it would be beyond our Article III judicial power to review the other. Absent authority to review the discretionary ground, any opinion of ours reviewing the nondiscretionary ground could not affect the final order's validity and so would be advisory only. *See Pub. Serv. Co. of Colorado v. United States EPA*, 225 F.3d 1144, 1148 n. 4 (10th Cir. 2000) ("This court would violate Article III's prohibition against advisory opinions were it to . .

-7-

. issue a mere statement that the EPA's interpretation and application of the law was incorrect without ordering some related relief."). There is no contention in this case that the IJ's decision on the nondiscretionary issue affected his exercise of discretion.

Nevertheless, there remains a challenging question to resolve before we can conclude that we lack jurisdiction. Does the IJ's exercise of discretion defeat jurisdiction if the actual (but unexpressed) ground for the BIA's summary affirmance was the IJ's alternative nondiscretionary ground?

## III.    DISCUSSION

Petitioner contends that we must look to the grounds for the BIA's affirmance without opinion, not the IJ's opinion, in determining whether we have jurisdiction. And because the BIA does not state these grounds when it affirms without opinion, Petitioner argues that we must remand to the BIA for clarification of whether it affirmed on a nonreviewable ground.

We disagree because remanding would be inconsistent with the governing regulation and this regulation is neither inconsistent with the statutory provision on jurisdiction, 8 U.S.C. § 1252, nor unconstitutional.

### A.    *Lanza v. Ashcroft*

Petitioner relies on *Lanza v. Ashcroft*, 389 F.3d 917, 927–28 (9th Cir. 2004), in which the Ninth Circuit held that it would be unconstitutional to look only to the IJ's

opinion in determining circuit-court jurisdiction under § 1252 when the BIA has affirmed without opinion. The *Lanza* reasoning proceeds in three steps.

First, *Lanza* asserts that the grounds on which a final order of removal rests, and hence on which the right to review in our court depends, are the grounds that caused the BIA to affirm the order. "If the BIA rejected the IJ's [nonreviewable] finding and affirmed on the [reviewable] merits, then Lanza has a statutory right to have a federal court review that decision"—that is, the decision on the reviewable ground on which the BIA affirmed. *Id.* at 928.

Second, *Lanza* asserts that the right to judicial review is an interest of which an alien may not be deprived without due process of law. Thus, when the BIA does not state whether it has affirmed on reviewable grounds only, due process requires that the Court of Appeals either assume jurisdiction or remand to the BIA for clarification lest it unwittingly deny the alien the right to review that she would have enjoyed had the BIA affirmed on a reviewable ground and said so. *Id.* at 928.

Third, *Lanza* chose remanding rather than assuming jurisdiction because proceeding without remand risks the issuance of an advisory opinion that "would have no effect on the judgment" if it turned out that the BIA rested its decision on a nonreviewable ground. *Id.* at 929; s*ee id.* at 928–32 (expressing a concern to preserve "the general presumption against federal court review" and recognizing that "federal courts are courts of limited jurisdiction").

We respectfully disagree. We find no right to judicial review in either the governing regulation or § 1252 that depends on the unstated grounds for the BIA's affirmance without opinion rather than the grounds stated in the IJ's opinion adopted by the BIA as the final agency decision. Nor does due process require that our jurisdiction turn on the BIA's reasoning rather than the IJ's decision. To explain our conclusion, we begin by describing the decisionmaking process with respect to the removal of aliens.

**B.      Administrative Appeal Process**

The Attorney General is "charged with the administration and enforcement of . . . laws relating to the immigration and naturalization of aliens." INA § 103, 8 U.S.C. § 1103(a)(1). "He shall establish such regulations . . . and perform such other acts as he deems necessary for carrying out his authority," § 1103(a)(3). Most of the Attorney General's powers in removal proceedings are exercised in the first instance by immigration judges. *See* INA § 101(b)(4), 8 U.S.C. § 1101(b)(4) (defining *immigration judge*); 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."). The statute does not provide for an administrative appeal. But by regulation the Attorney General has provided for administrative review of these IJ decisions in the BIA. 8 C.F.R. §§ 1003.1(b)(3) (granting BIA jurisdiction over appeals from IJ decisions in removal proceedings); 1003.38(a); 1240.15.

The BIA is wholly a creature of regulation. It is not mentioned in the United States Code. It is simply an instrument through which the Attorney General exercises the powers conferred on him by the INA. Its organization and authority are set out in 8 C.F.R. § 1003.1. It is ordinarily composed of 11 members who are attorneys appointed by the Attorney General. *Id.* § 1003.1(a)(1)–(2). The BIA issues decisions by individual members, three-member panels, or as a whole, en banc. *Id.* § 1003.1(a)(3) & (5)

When an appeal is taken to the BIA, it may be summarily dismissed by a member or a panel. *Id.* § 1003.1(d)(2) (listing specific grounds). An appeal that is not summarily dismissed can be disposed of in three ways: (1) a member may affirm without opinion, *id.* § 1003.1(e)(4); (2) a member may "issue a brief order affirming, modifying, or remanding," *id.* § 1003.1(e)(5); or (3) a member may designate a case for review by a panel, but only for six specified, but broad, reasons, *id.* § 1003.1(e)(6).

The BIA is to affirm without opinion when (1) "the result reached in the decision under review was correct"; (2) "any errors in the decision under review were harmless or nonmaterial"; and (3) "[t]he issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation," or "[t]he factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion." *Id.* § 1003.1(e)(4)(i).

When the BIA affirms without opinion, the decision below is "the final agency determination," *id.* § 1003.1(e)(4)(ii)—in this case, the final order of removal.

-11-

An order affirming without opinion, issued under authority of [8 C.F.R. § 1003.1(e)(4)(ii)], shall not include further explanation or reasoning. Such an order approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the immigration judge or the Service were harmless or nonmaterial.

*Id.* This provision plainly bars a BIA member who issues an affirmance without opinion from explaining the reasons for the affirmance, even though they are different from those stated by the IJ. Nowhere does the regulation provide for further clarification on remand from us; indeed, to order the BIA to explain itself, even to the extent of stating whether it affirmed on a reviewable, nondiscretionary or nonreviewable, discretionary ground, would contradict 8 C.F.R. § 1003.1(e)(4)(ii). *See Tsegay v. Ashcroft*, 386 F.3d 1347, 1357 (10th Cir. 2004).

C. **Statutory Validity of the Regulation**

We see no reason for holding that the operation of this regulation conflicts with § 1252, which governs court-of-appeals jurisdiction to review orders of removal. Section 1252 makes our jurisdiction to review a final order of removal contingent on the grounds on which that order rests: if the grounds are discretionary, then we lack jurisdiction.

Petitioner and *Lanza* appear to assume that the decision from which jurisdiction is determined must be the decision by the highest tribunal in the hierarchy that considers the matter. Why that must be so is unclear to us. The Attorney General, for whatever reason, may prefer to stand his ground on the decision of the IJ who heard the case rather than the single member of the BIA who reviewed the record. We have already held in *Yuk*, 355

-12-

F.3d at 1230, that the Attorney General's doing so does not violate the administrative-law principles announced in *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947), by depriving us of a reasoned decision to review.

To be sure, Petitioner's contention is not the same as Yuk's—the issue here is not the merits of the removal order but our jurisdiction to review it. But if there is no statutory bar to the regulation's requiring that we look to the IJ's decision (rather than the BIA's unexpressed reasons) in reviewing the merits of removal (which is the alien's fundamental concern), we fail to see how the statute bars the regulation from imposing the same requirement when we are determining our jurisdiction.

An instructive analogy arises out of Supreme Court practice with respect to jurisdiction to review state-court decisions. The Supreme Court may review state-court decisions interpreting federal law. *See* 28 U.S.C. § 1257; *see also* U.S. Const. art. III § 2. But the Supreme Court has long held that it lacks jurisdiction under § 1257 to review a state-court decision that rests on independent and adequate state-law grounds. *See Michigan v. Long*, 463 U.S. 1032, 1037–42 (1983) (stating current test); *Murdock v. City of Memphis*, 87 U.S. 590, 634–36 (1874); Erwin Chemerinsky, Federal Jurisdiction 684–86 (4th ed. 2003) (recounting origins of doctrine in Judiciary Act of 1789). When the highest court of a state decides a case on both state- and federal-law grounds and the state-law grounds are independent of the federal-law grounds, the Supreme Court lacks jurisdiction.

But *which* state-court decision must rest on independent and adequate state-law grounds? When the state's highest court has issued an opinion, that decision is undoubtedly the relevant one. Occasionally, however, the opinion under review is by a lower court because the state's highest court declined to grant review. In denying review, the high court might have thought the decision correct on state-law grounds only, on federal-law grounds only, or on both, just as the BIA in our case might have affirmed without opinion on discretionary grounds only, on nondiscretionary grounds only, or on both. And, analogously to the situation in our case, the high court's silently letting stand a lower-court decision that rests on state-law grounds because the high court thought there was an alternative federal-law ground for the result reached could be thought to be a circumvention of the Supreme Court's jurisdiction. To fix the problem, just as Petitioner suggests, the Supreme Court might remand such a case to the state's highest court to clarify whether it had denied review because it thought the lower-court decision correct on state-law grounds, or for some other reason.

That, however, is not Supreme Court practice; instead, the Court simply reviews the lower-court decision. *See Illinois v. Rodriguez*, 497 U.S. 177, 180–81, 182 (1990) (Illinois Supreme Court denied petition for leave to appeal from Appellate Court of Illinois; United States Supreme Court looked to Appellate Court's opinion to determine its jurisdiction). In other words, the Supreme Court will decide that it lacks jurisdiction when the lower state court's decision rests on an independent state ground even though

-14-

the ultimate (unexpressed) ground for the state-court result—the ground on which the state's highest court decided to deny review—was solely a federal-law ground that would confer jurisdiction on the Court had the state court expressed it as the basis for decision. In such a situation, the decision from which jurisdiction is determined is not the decision by the highest tribunal in the hierarchy that considered the matter.

A BIA affirmance without opinion is the functional equivalent of a denial of certiorari, because the lower tribunal's decision is the decision of the agency (the counterpart of the state judiciary), and the reasons for affirmance (the counterpart of denial of certiorari) are unknown and unknowable, *see Tsegay*, 386 F.3d at 1353 (reason for affirming without opinion is unreviewable). The fact that the court denying certiorari may have express criteria for deciding whether to grant certiorari, *see* N.M. Stat. Ann. § 34-5-14 (grounds for granting certiorari by the New Mexico Supreme Court), does not change the nature of the certiorari decision.

We see nothing in the INA that would forbid the Attorney General from establishing an administrative-appeal scheme that included a certiorari-like process for denying review by the BIA. Indeed, as previously noted, the statute contains no reference whatsoever to the BIA or administrative appeals. Even if affirmance without opinion is not formally identical to a certiorari process, its operation is essentially the same and likewise creates no conflict with the statutory scheme. Moreover, to adopt Petitioner's view is tantamount to saying, contrary to our decision in *Yuk*, that affirmance without

-15-

opinion is prohibited by the statute. After all, if Petitioner is correct that our jurisdiction must be determined on the basis of the BIA's decision, we could never hear an appeal of a removal hearing without first remanding to the BIA for an explanation of the affirmance, because the BIA may have rested its decision on a nonreviewable ground, even though the IJ's grounds for denial were reviewable.

D.    **Constitutionality of the Regulation**

Petitioner's constitutional due-process challenge can be readily disposed of. *Lanza* found a due-process problem only because the affirmance-without-opinion procedure interfered with what it held to be a statutory right to review the BIA's decision. But we disagree that there is such a statutory right. As we have explained, the statutory right to judicial review of a removal order is simply the right to review of the decision of the Attorney General, and the Attorney General can designate his decision as being that of the IJ just as well as he can designate it as being the BIA's decision. Thus, there could be a denial of due process only if there were a constitutional right to a decision by the BIA. But, of course, there is no right even to an appeal to the BIA. *See Yuk*, 355 F.3d at 1232.

The only due-process question is whether the BIA's practices accord an alien being removed from this country due process of law. We hold that they do. The constitution requires no more than a fair administrative proceeding, which Petitioner received in this case. Indeed, the Supreme Court has held that judicial review of the Government's expulsion of aliens is entirely a matter of legislative grace. *See Carlson v.*

-16-

*Landon*, 342 U.S. 524, 537–38 (1952) ("No judicial review [of deportation] is guaranteed by the Constitution."); *Duldulao v. INS*, 90 F.3d 396, 399–400 (9th Cir. 1996) (relying on *Carlson* to reject contention that Due Process Clause requires judicial review of deportation orders).

## IV. Conclusion

Because the IJ denied relief on discretionary grounds, we DISMISS the petition for lack of appellate jurisdiction.