# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-2959

MARIA DOLORES CUELLAR LOPEZ,

*Petitioner*,

*v.*

ALBERTO R. GONZALES, Attorney General of the United States,

*Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A78-125-697

ARGUED APRIL 8, 2005—DECIDED OCTOBER 26, 2005

Before FLAUM, BAUER, and WOOD, *Circuit Judges.*

WOOD*, Circuit Judge.* After living in the United States continuously since 1982, Maria Dolores Cuellar Lopez (Cuellar) left the country with her youngest child, leaving her three other children in a friend's care, so that she could visit Mexico to find the father of her youngest child. She found him and discovered that he had another family living in Mexico. After staying in Mexico for about ten days, she flew back to the United States. At the Houston airport, immigration officials stopped her and she presented a false U.S. birth certificate to document her immigration status.

The officials spotted the fraud, but they allowed her into the country under humanitarian parole because of her three minor children. At the same time, they issued her a Notice to Appear for removal proceedings.

Cuellar conceded removability and applied for cancellation of removal under INA § 240A(b), 8 U.S.C. § 1229b(b). After a hearing, the Immigration Judge (IJ) denied her application on two grounds. First, he found that she was unable to meet the statutory requirement of being "physically present" in the U.S. for ten years because of her attempted unlawful entry. Second, he found that she lacked "good moral character" because of her unlawful reentry, and thus she was statutorily barred from cancellation of removal under INA § 101(f)(3), 8 U.S.C. § 1101(f)(3). Alternatively, even if not statutorily barred, the IJ found that as a matter of discretion her application should be denied for lack of good moral character. The Board of Immigration Appeals (BIA) affirmed the IJ's decision without an opinion. See 8 C.F.R. § 1003.1(e)(4).

Unfortunately, because the BIA streamlined this case, we do not know on what grounds it affirmed the IJ's decision, which turns out to be critical to determining whether we have jurisdiction to decide this appeal. We have held that an IJ's interpretation of the term " 'continuous physical presence' raises a non-discretionary question of statutory interpretation. As such, it falls outside § 1252(a)(2)(B)'s jurisdiction stripping rule." *Morales-Morales v. Ashcroft*, 384 F.3d 418, 423 (7th Cir. 2004). Both parties concede, however, that the IJ's determination that Cuellar lacks good moral character is a discretionary decision and therefore it is beyond our review. See 8 U.S.C. § 1252(a)(2)(B)(i) ("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b [cancellation of removal]."). If the BIA saw no flaw in the IJ's discretionary ruling, then Cuellar has no further recourse in this court. If, however, it

thought that the result reached by the IJ was correct because Cuellar was statutorily barred from cancellation as a result of the continuous physical presence finding and believed it unnecessary to reach the question whether the IJ had abused his discretion in finding lack of good moral character, we have jurisdiction to review the interpretive question. Under the circumstances, we have concluded that we must remand this case to the BIA, so that it may indicate the basis for its conclusion.

## I

On May 8, 2002, Cuellar appeared for her removal hearing before the IJ. After the hearing, the IJ issued an oral opinion ordering removal and denying cancellation of removal, finding that she had not satisfied the first two requirements for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1), which requires that the petitioner:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;
>
> (C) has not been convicted of [certain enumerated offenses; and]
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

First, the IJ found that Cuellar's attempted unlawful entry after her 10-day visit in Mexico ending January 5, 2000, constituted a break in the 10-year period of physical

presence required by § 1229b(b)(1)(A). The IJ considered the statutory rules governing certain breaks in physical presence, which specify that:

> [a]n alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) of this section if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

8 U.S.C. § 1229b(d)(2); INA § 240A(d)(2). Notwithstanding this 90-day requirement, however, the IJ determined that Cuellar's 10-day trip constituted a break in physical presence. In reaching this conclusion, the IJ relied on the BIA's decision in *In re Romalez-Alcaide*, 23 I & N Dec. 423 (BIA 2000), which found that a voluntary departure under the threat of deportation or removal proceedings can constitute a break in the physical presence requirement of § 1229b(b), even if the break was less than 90 days. The IJ found that the BIA's rationale in *Romalez-Alcaide* supported his finding that other breaks that were less than 90 days could also constitute a break in physical presence.

In addition, the IJ found that Cuellar was ineligible for cancellation of removal because she fell as a matter of law under one of the categories in INA § 101(f)(3), 8 U.S.C. § 1101(f)(3), which precludes a finding of "good moral character." The IJ explained that because she had admitted to "committing a crime involving moral turpitude by presenting a false birth certificate" she could have been prosecuted under 18 U.S.C. § 1015(e), which is a felony offense. Based on this admission, the IJ found that she was "an alien, who admit[ed] the[] essential elements of a crime involving moral turpitude, [and was therefore] inadmissible under Section 212(a)(2)(A)(i)(I)." Because the IJ determined that Cuellar could be found inadmissible under § 212(a), he concluded that § 101(f)(3) statutorily barred him from finding she was a person of "good moral character."

In the alternative, the IJ found that "[e]ven if the respondent is not statutorily barred from showing good moral character, I would find that the negative weight attributable to her conduct offsets the other favorable evidence and establishes that she is not a person of good moral character."

The BIA summarily affirmed the decision of the IJ on July 2, 2004, in an order that stated:

> PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4).

Cuellar filed a timely appeal to this court.

## II

Before turning to Cuellar's appeal, we note that Congress's recent enactment of the REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231, made several changes to the immigration laws, including some that affect a petitioner's burden in asylum cases and the standard of review of orders of removal. See REAL ID Act, §§ 101(a)(3) and 101(e). The new legislation did not, however, change the requirements for cancellation of removal found in 8 U.S.C. § 1129b, which is the subject of this appeal.

The first question we must address is whether we have jurisdiction to review the BIA's decision denying Cuellar's request for cancellation of removal. The government insists that jurisdiction is lacking because of the bar found in 8 U.S.C. § 1252(a)(2)(B)(i) on review of a discretionary decision of the Attorney General. If it were clear that this was the ground on which the BIA relied, we would agree with that position. As we explained above, however, the BIA's decision to affirm summarily leaves us in the dark. Had the IJ based his decision only on the ground that

Cuellar's visit to Mexico broke her continuous physical presence as a matter of law, her appeal could go forward, because we have jurisdiction to review "whether an alien is being removed for a permissible reason," *Morales-Morales*, 384 F.3d at 422 (quoting *Bosede v. Ashcroft*, 309 F.3d 441, 445 (7th Cir. 2002)), and a determination about a break in physical presence is a "non-discretionary question of statutory interpretation" that falls within our jurisdiction, *id.* at 423.

Our sister circuits have come to different conclusions about the reviewability of an IJ decision that contains both a reviewable and nonreviewable basis, which the BIA affirms without opinion. Before looking at their decisions, it is worth recalling exactly what the BIA itself says it is doing in such cases:

> An order affirming without opinion, issued under authority of this provision [8 C.F.R. § 1003.1(e)(4)], shall not include further explanation or reasoning. Such an order approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the immigration judge or the Service were harmless or nonmaterial.

8 C.F.R. § 1003.1(e)(4)(ii). Affirmances under this procedure thus are not equivalent to any kind of "adoption" of the IJ's opinion. They address only the bottom-line result.

The Ninth, Fifth, and First Circuits have concluded that the proper disposition when an IJ opinion contains both reviewable and nonreviewable grounds is to remand to the BIA so that it may clarify the basis of its holding. See *Lanza v. Ashcroft*, 389 F.3d 917, 919-20, 932 (9th Cir. 2004) (holding that a remand to the BIA is necessary where the IJ's decision is founded on a discretionary and nondiscretionary basis and the BIA affirms without an

opinion); *Zhu v. Ashcroft*, 382 F.3d 521, 527 (5th Cir. 2004) (same); *Haoud v. Ashcroft*, 350 F.3d 201, 206-08 (1st Cir. 2003) (same). The Tenth Circuit, in contrast, rejects the "assum[ption] that the decision from which jurisdiction is determined must be the decision by the highest tribunal in the hierarchy that considers the matter," holding instead that "we look to the IJ's decision (rather than the BIA's unexpressed reasons) . . . when we are determining our jurisdiction." *Ekasinta v. Gonzales*, 415 F.3d 1188, 1193-94 (10th Cir. 2005).

We agree with the reasoning of the majority position in this circuit split, which seems to us the best way to apply the rules that confine our jurisdiction in immigration matters to particular questions, while still safeguarding due process. As the Ninth Circuit explained in *Lanza*:

> We [ ] find that intelligent exercise of our appellate jurisdiction requires remand. Because the BIA affirmed without opinion, we have no way of knowing whether the BIA rejected Lanza's asylum claim on the basis of the IJ's procedural determination or his alternative finding on the merits. Due process requires us to either reach the merits or remand for clarification . . . . Given our limited jurisdiction and the general presumption against federal court review, we remand to the BIA with instructions to clarify the grounds for its rejection of Lanza's asylum application.

*Lanza*, 389 F.3d at 932. Given the "jurisdictional conundrum" created by the interplay of the bar to judicial review contained in § 1252 and the BIA's streamlining regulations, the proper solution is to afford the BIA "discretion as an agency . . . to use its affirmance without opinion procedure" while leaving us "free to vacate and remand" when we simply cannot determine the basis on which relief was denied. *Zhu*, 382 F.3d at 527.

We do not find persuasive the Tenth Circuit's conclusion that the streamlining regulations do not permit remands for

clarification and that we should look to the IJ's decision, rather than the BIA's order, to determine our jurisdiction. In *Ekasinta*, the Tenth Circuit stated that:

> Th[e] [affirmance without opinion] provision plainly bars a BIA member who issues an affirmance without opinion from explaining the reasons for the affirmance, even though they are different from those stated by the IJ. Nowhere does the regulation provide for further clarification on remand from us; indeed, to order the BIA to explain itself, even to the extent of stating whether it affirmed on a reviewable, non-discretionary or nonreviewable, discretionary ground, would contra-dict [the statement in] 8 C.F.R. § 1003.1(e)(4)(ii) [that "[a]n order affirming without opinion . . . shall not include further explanation or reasoning"].

415 F.3d at 1193. The court then held that the court of appeals was required to base its jurisdiction on the IJ's decision alone, analogizing to the *Michigan v. Long*, 463 U.S. 1032 (1983), context and the Supreme Court's practice of looking to a lower state court's ruling to determine whether independent and adequate state law grounds exist for a decision when a state's highest court declines to grant review. *Id.* at 1194 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 180-81, 182 (1990)).

   The trouble with the Tenth Circuit's analysis is that it fails to read the streamlining regulations of the Board as a whole. The Board itself sets forth limits on the use of the authority to affirm without opinion: it may be exercised by a single member only if he or she concludes that (1) the result reached was correct, (2) any errors were harmless, and (3) either the issues are squarely controlled by Board or court precedent or the factual and legal issues are too insubstantial to warrant issuance of a written opinion. 8 C.F.R. § 1003.1(e)(4)(i). If the strict criteria of § 1003.1(e)(4)(i) are not satisfied, the regulation grants

authority to a single BIA member to issue an order explaining the Board's position. See 8 C.F.R. § 1003.1(e)(5) ("If the Board member to whom an appeal is assigned determines, upon consideration of the merits, that the decision is not appropriate for affirmance without opinion, the Board member shall issue a brief order affirming, modifying, or remanding the decision under review. . . ."). The regulations also permit an individual BIA member to reconsider or reopen a decision she previously adjudicated, or even reverse a decision if "required by intervening Board or judicial precedent." *Id.* That is precisely the authority that the Tenth Circuit apparently thought was lacking. On remand for clarification, § 1003.1(e)(5) gives a single Board member ample authority to explain the decision that was reached.

The Tenth Circuit's analogy to the Supreme Court's certiorari process is also problematic. Unlike certiorari review, which "is not a matter of right, but of judicial discretion," SUP. CT. R. 10, petitioners in immigration proceedings have a regulatory right to appeal removal decisions to the BIA. See 8 C.F.R. §§ 1003.1(b)(3), 1003.38, 1240.15. Whether the INA's statutory scheme would permit "the Attorney General [to] establish[] an administrative-appeal scheme that included a certiorari-like process for denying review by the BIA," as suggested by the Tenth Circuit, *Ekasinta*, 415 F.3d at 1195, is not before us and we express no opinion on this matter. The fact is that it has not done so.

Finally, we do not agree with the Tenth Circuit that "if . . . our jurisdiction must be determined on the basis of the BIA's decision, we could never hear an appeal of a removal hearing without first remanding to the BIA for an explanation of the affirmance, because the BIA may have rested its decision on a nonreviewable ground, even though the IJ's grounds for denial were reviewable." *Id.* As we have explained previously, if the Attorney General finds it

necessary to engage in "procedural short cut[s]," the BIA may incur "institutional costs." *Morales-Morales*, 384 F.3d at 423. Sometimes it will be clear that there is no jurisdiction in the court of appeals, where the IJ's decision rests entirely on nonreviewable grounds or the single member adds a statement that the BIA endorses the IJ's discretionary call. Sometimes it will be equally plain that review is possible, where the only issues the petitioner is raising are legal in nature. Only in the set of cases like this one, where we genuinely cannot tell if the BIA even found it necessary to reach the IJ's discretionary ruling, is clarification needed. A contrary approach would be inconsistent, in our view, with the "strong presumption in favor of judicial review of administrative action" generally. *INS v. St. Cyr*, 533 U.S. 289, 298 (2001).

In light of our decision to remand this case to the BIA for clarification, we do not reach the question whether it is possible for us to review the BIA's administrative decision to affirm without opinion. This is another topic of disagreement among the circuits. Some have held that appellate courts are authorized to review the BIA's procedural decision to streamline a case. See, *e.g.*, *Smriko v. Ashcroft*, 387 F.3d 279, 294 (3d Cir. 2004) ("We hold that the issues addressed by single BIA members under § 1003.1(e)(4)(i) of the streamlining regulations are not committed to agency discretion and that the resolutions of those issues are judicially reviewable."); *Haoud v. Ashcroft*, 350 F.3d 201, 206 (1st Cir. 2003) (holding that "the Board's own regulation provides more than enough 'law' by which a court could review the Board's decision to streamline"); *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 852-53 (9th Cir. 2003) (rejecting "the government's argument that the streamlining decision is inherently discretionary," to conclude that streamlining decisions based on nondiscretionary determinations are subject to ordinary judicial review), see also *Denko v. INS*, 351 F.3d 717, 732 (6th Cir. 2003) (assuming without

deciding that judicial review of the BIA's decision to streamline is proper). Others disagree. The Eighth and the Tenth Circuits have found that the decision to streamline a case is a discretionary decision of the BIA and therefore nonreviewable. See, *e.g.*, *Ngure v. Ashcroft*, 367 F.3d 975, 983 (8th Cir. 2004) (holding that "the BIA's decision whether to employ the A[ffirmance] W[ithout] O[pinion] procedure in a particular case is committed to agency discretion and not subject to judicial review"); but see *Begna v. Ashcroft*, 392 F.3d 301, 305 (8th Cir. 2004) (Lay, J., concurring) ("Eighth Circuit precedent holding [that judicial review is unavailable] is ill-reasoned and should be over-turned."); *Tsegay v. Ashcroft*, 386 F.3d 1347, 1355-56 (10th Cir. 2004) (agreeing with the Eighth Circuit's decision in *Ngure*).

It would also be premature for us to reach the question whether the IJ erred in concluding that Cuellar could not qualify for cancellation of removal under the 90-day and 180-day rules found in § 1229b(d)(2), because of her trip to Mexico. Should it become relevant, however, that part of the IJ's decision must be reviewed in the light of our *Morales-Morales* ruling. Like the petitioner in *Morales-Morales*, Cuellar did not depart the United States under threat of removal and therefore *Romalez-Alcaide* does not directly apply to her case.

## III

We REMAND to the BIA to clarify the grounds for its decision to affirm the IJ's decision denying cancellation of removal to Cuellar.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*